# LOGAN, Appellant, v. FIELD*.

**Division Two, December 12, 1905.**

1. **APPELLATE JURISDICTION: Constitutional Question: How Raised.** A constitutional question may be raised, so as to give the Supreme Court jurisdiction of the appeal, by excepting to an instruction given, and then, in the motion for a new trial, pointing out wherein the instruction is in conflict with the Constitution.

2. ———: ———: **Nine-Jury Law.** The appeal from a judgment rendered on November 17, 1901, by nine jurors, the court having told the jury that nine of their number might render a verdict, to which instruction appellant excepted and raised the point in his motion for a new trial that it was not authorized by the Constitution of the State, is to the Supreme Court.

3. **EXPERT TESTIMONY: No Foundation: Indefinite Answer.** Although no foundation was laid upon which to bottom the hypothetical question, yet if the answer was so indefinite and unsatisfactory that it could not have prejudiced appellant, the judgment will not be reversed.

4. **IMPEACHMENT EVIDENCE: General Objection.** Objection to evidence as a whole, which was admissible for the sole purpose of laying a foundation for impeachment, should be overruled.

5. **INSTRUCTIONS: Based on Evidence.** Where some of the instructions base plaintiff's right to recover upon the evidence before the jury, it is not necessary that all the instructions should in express terms repeat the same thing over again. All that is necessary is that the instructions, when taken together, present the case in such a way as to make the jury understand that their verdict must be predicated upon the evidence.

6. ———: ———: **Right to Complain.** Where the verdict was for appellant he cannot complain of instructions for defendant which were confined to the issues involving his right to recover.

7. **INSTRUCTIONS: Physician's Compensation: When Entitled to no Pay for Services.** The court approves as substantially correct instructions given in this case which declared the law as follows:
    1. **Implied Promise.** The law implies a promise of the patient to pay for medical services, without regard to

---

* Note.—A former appeal by defendant in this case was decided by the Kansas City Court of Appeals, 75 Mo. App. 594.

Logan v. Field.

whether such services were beneficial to the patient or not. "

2. **Reasonable Ground for Treatment.** A physician may pursue a particular course of treatment and charge the patient therefor, as long as the physician has reasonable cause to believe the disease of the patient will yield to the treatment, and this without regard to whether the patient is or is not cured or benefited by such professional service.

3. **Physician's Discretion.** The physician has not unlimited discretion to serve his patient.

4. **Physician's Good Faith.** The patient has a right to expect good faith from the physician; also to rely upon the supposed superior knowledge of the doctor to discover, determine and advise what course should be pursued in his case.

5. **Physician's Competency.** A physician cannot recover for worthless treatment if he knew or ought as a reasonably competent and prudent man of his profession to have known of the uncertainty of a cure, and the patient went for and received such treatment because encouraged by the physician to receive the same or because the physician failed to inform him of the uncertainty of the treatment.

6. **Implied Promise to Patient.** In accepting a patient, the physician in effect says, that he possesses and will exercise reasonable skill and judgment to discover the trouble of the patient and whether it is curable.

7. **Conscious Inability: Fraud: Concealment.** If a physician is conscious of his inability to understand or properly treat the patient's trouble, he should at once inform the patient thereof; concealment by the physician of his ignorance in performing unbeneficial service, would be a fraud, and for which service the physician would be entitled to no compensation.

8. **Lack of Skill.** If the failure of a physician to discover and cure the trouble of his patient is because the physician does not possess reasonable skill or because he does not exercise such skill, he is not entitled to any pay for his services.

9. **Worthless Service: Guaranty.** The law does not permit a physician to recover for worthless professional service, even though the physician does not guarantee a cure, if such service is negligent, unskillful or unfaithful.

10. **Expert Testimony.** A jury is not bound by the opinion of physicians who have testified as experts in the case; such opinions may be given such weight as the jury deem them entitled to, or be altogether disregarded by the jury in so far as deemed unreasonable.

Transferred from Kansas City Court of Appeals.

AFFIRMED.

*W. S. Cowherd, R. J. Ingraham* and *Sam B. Strother* for appellant.

(1) Appellant, in his motion for new trial, assigned, among others, the following grounds therefor: "Because the instructions given by the court at the request of defendant are contrary to the Constitution of the State of Missouri." Appellant, having thus presented to the trial court a question involving the construction of the Constitution of the State, placed the appellate jurisdiction of this case in the Supreme Court. Bank v. Bennett, 138 Mo. 500; Baldwin v. Fries, 103 Mo. 286; Bennett v. Railroad, 105 Mo. 644; Turley v. Barnes, 131 Mo. 552; State ex rel. v. Smith, 141 Mo. 10; State ex rel. v. Smith, 150 Mo. 76. (2) In the examination of his own witness respondent was permitted, over specific objections by appellant, to propound a hypothetical question based on a condition of fact not at that time supported by the evidence, and which was not subsequently shown to exist. All the evidence shows that the trouble Judge Field had in 1890 was inflammation of the nasal cavity; while that he had in 1892 was inflammation above that extending into the sinus. The doctor had relieved the first trouble by "galvanic cautery." There was not a word of evidence tending to show that he had cauterized this canal leading to the sinus, where the last trouble existed. And yet the question was

based on the false premise that in 1890 he had cauterized this canal. This was error. Russ v. Railroad, 112 Mo. 49; Hicks v. Railroad, 124 Mo. 125; Powers v. Kansas City, 56 Mo. App. 577. (3) The admission of statements made by Dr. Logan, Sr., as to what his son (appellant) had said, was nothing more nor less than the admission of hearsay testimony, and is therefore error. There was no ground laid for impeachment. State v. Pruett, 144 Mo. 95; Dun v. Altman, 50 Mo. App. 239; Fange v. Burgess, 71 Mo. 389. (4) Excepting instruction 7, given for respondent, all of his instructions utterly fail to direct the jury to the evidence in the case as the basis for their finding. All of the testimony, excepting that of the respondent, was the testimony of medical experts. This abstract method of framing and giving instructions was peculiarly erroneous in this case. For, by instruction 9, the jury was given to understand that they might disregard all the testimony in the case, and then, by a series of instructions given by respondent, referring in no way to the evidence, the jury was warranted in drawing their conclusion from any source whatever. Rosenthal v. Brady, 63 Mo. App. 403; Hanlon v. O'Keefe, 38 Mo. App. 273.

*Wash Adams* for respondent.

(1) Instruction 1 given by the court at the request of defendant that "the defendant, by submitting himself to plaintiff for treatment, did not confer upon the plaintiff unlimited discretion to run a bill for any kind of treatment and to any extent the plaintiff might see fit to bestow upon him," declared a correct proposition of law. Hill v. Featherstone, 7 Bingh. (Eng.) 572. (2) The first clause of instruction 2, given at defendant's request, "that defendant had the right to expect good faith from plaintiff and to rely upon the supposed superior knowledge of plaintiff to discover, determine and advise what way should be pursued in

his case," is recognized law. Hill v. Featherstone, 7 Bingh. 672; Schoonover v. Holden, 87 N. W. 737. (3) Appellant complains of the instructions given at the request of the defendant which required him to inform the defendant that his case was incurable, or that a cure was doubtful, if the appellant knew, or ought, as a reasonably prudent and skillful doctor, to have known, that a cure was impossible or uncertain from the treatment administered. In other words, the kernel of the appellant's condemnation of the instruction given at defendant's request seems to be this: That the doctor in treating a patient has a sort of "graft" that the courts and juries and patients have no right to look into or take away. That though the doctor be ignorant and knows, or has reason to know, that he does not understand the trouble of the patient and therefore can have no fair hope of a successful result of his treatment, he has a right to conceal from the patient his ignorance of the case, to conceal from the patient his lack of reasonable hope of accomplishing the result sought by the patient; to conceal from the patient the doubts in his mind, or that ought to be in the mind of a reasonably learned and prudent doctor, that the treatment administered would be successful to accomplish the result sought by the patient. That such contention is not the law is established by the decision in the former appeal (75 Mo. App. 594) and by the cases therein cited. Under the law, as declared by the decision in the former appeal, a doctor's right to recover is not defeated by his failure to cure his patient. But to entitle him to recover when the service was worthless or unbeneficial, it devolves upon the physician to prove that this result was for no failure to exercise reasonable skill and diligence on his part. *Res ipsa loquitur.* Ordonaux, in his "Jurisprudence of Medicine" speaks of the right of the physician to recover compensation for his services, and on page 42 says: "If the good effect of his treatment

and the consequent value of his services be disputed, he must be prepared to show that his labor was performed with ordinary skill and in the ordinary way of his profession." 49 N. J. Law 687. The fault in the instructions is that they assume that there is a burden upon the defendant to prove the negative of the plaintiff's exercise of reasonable skill and diligence, together with the worthlessness of the treatment, when the burden was upon the plaintiff to prove skill and diligence in the treatment in question, as the benefit therefrom was an issue. The testimony of defendant is not "simply that he did not think he was benefited." His testimony is positive that he was not benefited at all by the treatment in question, and the plaintiff's testimony virtually concedes it. (4) The plaintiff having obtained declarations of law to the jury submitting only elements of a contract with the defendant implied by the law, it certainly was the right of the defendant to have all of the elements of contract implied by the law between him and defendant. (5) There is nothing in the appellant's objection to instruction 2, given at the request of the defendant, to the use of the words therein, "ought, as a man of his profession, to have known." Neither these words, nor the words in any other instruction given for defendant, refer to the skill and care of physicians in any other locality. However, if they did, it would not be error. Whitsell v. Hill, 101 Iowa 629; Baker v. Hancock (Ind.), 64 N. E. 38. (6) The other instructions given for defendant as a whole declare and recognize that only reasonable skill and diligence were required of the appellant in the treatment in question. This was, therefore, implied in instruction 2, given at the request of defendant. The judgment in this case should not, therefore, be reversed, because the words, "in the exercise of reasonable skill and diligence," were not repeated in this instruction. Harmon v. Donohoe, 153 Mo. 263. (7) The plaintiff poses as a nose and

catarrh specialist. Thus holding himself out to the public, it is doubtful if he has any cause of action for services which are worthless to the patient. Hupe v. Phelps, 2 Stark (Eng.) 480; Hedden v. Institute, 62 Minn. 147; Baker v. Hancock (Ind.), 64 N. E. 38. Mere ordinary skill and diligence is not what the patient seeks of such a doctor. He has a right to expect more than this without fair notice from the specialist. There is not a meeting of minds between patient and physician on this measure of skill and diligence, as in the case of employment of a doctor who is a general practitioner, who claims no specialty and who does not hold himself as possessing unusual skill in the treatment of diseases. (8) Appellant's complaint of instruction 9, given for defendant, is groundless. This style of instruction and this particular instruction has been long approved in the courts of this State. Hoyberg v. Henske, 153 Mo. 63. This instruction did not assume, but left to the jury to determine, the incredibility of the expert witnesses in this case. This instruction was peculiarly proper, indeed it was essential to the justice of the case, in view of the manifest conspiracy existing between the plaintiff and the doctors who testified to win, in this case. Their testimony brings to mind the celebrated words of Lord Campbell in the Tracy Peerage Case, 10 C. L. & Fin. 191, that, "Hardly any weight is to be given to the evidence of what are called scientific witnesses; they come with a bias on their minds to support the cause in which they are embarked." Moratzky v. Wirth, 74 Minn. 146.

BURGESS, P. J.—On the 24th day of March, 1896, plaintiff instituted suit before Theo. S. Case, a justice of the peace of Jackson county, against the defendant, R. H. Field, upon an account for one hundred and sixty dollars for services rendered defendant by plaintiff, as a physician. Plaintiff recovered, before the justice, judgment for one hundred and sixty dol-

lars, the full amount of his claim. Defendant then took the case, by appeal, to the circuit court of Jackson county, where, upon a trial *de novo* before the court and jury, plaintiff again recovered judgment for one hundred and sixty dollars. From this judgment defendant appealed to the Kansas City Court of Appeals, when the judgment was reversed and the cause remanded for further trial. Thereafter, on the 17th day of November, 1901, the case was again tried in said circuit court, and plaintiff recovered a verdict and judgment in the sum of fifty dollars. After unavailing motions for a new trial and in arrest of judgment, plaintiff appealed from this judgment to the Kansas City Court of Appeals, and thereafter, on motion of plaintiff, that court transferred the cause to this court, upon the ground that the court had no jurisdiction of the appeal because of there being a constitutional question involved.

The facts are substantially as follows:

The plaintiff was a practicing physician, making a specialty of diseases of the nose, throat and ear. He had treated defendant in the year 1890, and his bill for that service was paid by defendant. Defendant applied to him again for treatment in the month of October, 1892. The trouble defendant was suffering from in 1890 was different from that with which he was troubled in 1892. In the first instance he had an enlargement or thickening of the mucous membrane or lining of the nasal cavity. The plaintiff cured him, and defendant was not back to see him again until 1892, when plaintiff found that he was suffering from inflammation of the middle turbinate bone, together with inflammation of the frontal sinus. Plaintiff, hoping to relieve the inflammation, and successfully treat the disease without an operation, gave defendant the treatment sued for, telling the defendant that he could not state whether a cure would be worked, and declined to guarantee that such could be effected. It ap-

pears, from plaintiff's testimony, that the defendant was benefited; that the case at times grew better; that the treatment administered to relieve the congestion in the canal leading to the sinus was successful, but that, from time to time, defendant would catch cold and violently blow his nose, thus keeping up the inflammation which tended to close the connection between the sinus and the nasal cavity.

Defendant's side of the case was presented by his own testimony and that of Dr. Leroy Dibble. The propriety and correctness of the treatment administered by plaintiff was supported by several physicians, and defendant's expert, Dr. Dibble, testified to the effect that plaintiff had been pursuing correct practice in endeavoring to work a cure without performing an operation. There was no contention on the part of defendant that he had been in any way injured by plaintiff's treatment, but he did testify that he did not think he was benefited thereby.

On behalf of the plaintiff the court instructed the jury as follows:

"1. If you find and believe from the evidence that the plaintiff rendered the services sued for to the defendant and at his request, and that no price was fixed or agreed upon, then the law implies a promise from the defendant to pay the plaintiff for such services what the same are reasonably worth, if anything; and this is true without regard to whether the treatment of plaintiff by defendant was beneficial to defendant.

"2. If you find and believe from the evidence that the plaintiff rendered the professional services to defendant as claimed by the plaintiff, then plaintiff is entitled to recover what you may find and believe from the evidence such services were reasonably worth, if anything, according to the usual charges of the medical profession in this vicinity; and this is true, although the services rendered may not have produced

a cure of the disease with which plaintiff was suffering.

"3. If you find and believe from the evidence that the plaintiff rendered the professional services to defendant as claimed by plaintiff, then the plaintiff is entitled to recover what you may believe from the evidence such services were reasonably worth, if anything, according to the usual charges of the medical profession in this vicinity.

"4. If the plaintiff knew that the disease from which the defendant was suffering was in the frontal sinus, and plaintiff had reasonable cause to believe in the exercise of ordinary care and skill that the same would yield to treatment without an operation, then he had the right to treat defendant for such trouble until such time as he became reasonably certain it was necessary to perform such operation; and he is entitled to recover for such services what the same are reasonably worth, if anything, without regard to whether defendant was benefited by said treatment or not."

Thereupon the court, at the request of the defendant, and over the objections of the plaintiff, instructed the jury in the words and figures following, except in instruction No. 2, which was a modification by the court of the instruction asked by the defendant, the modification being the striking out of the word "because" before the word "encouraged" and writing in lieu thereof the words "and was:"

"1. The defendant by submitting himself to plaintiff for treatment did not confer upon the plaintiff unlimited discretion to run a bill for any kind of treatment and to any extent the plaintiff might see fit to bestow upon him.

"2. Defendant had the right to expect good faith from plaintiff and to rely upon the supposed superior knowledge of the plaintiff to discover, determine and advise what course should be pursued in his case.

If the treatment sued for was worthless to defendant, and if the plaintiff then knew, or ought as a man of his profession to have known, of the uncertainty or probable uncertainty of a cure of defendant from the treatment administered, and the defendant went for and received such treatment, and was encouraged by plaintiff to receive the same or because plaintiff failed to inform him of the uncertainty or probable uncertainty of a cure from such treatment, the verdict should be for the defendant.

"3. Plaintiff had no right, even if in the best of faith, to render service of no substantial benefit to defendant and charge therefor, if he himself had doubt, or a reasonably prudent and competent doctor ought to have had doubt, in his mind, of such service being a successful treatment of defendant's trouble, unless he fully informed defendant of such doubt and defendant with such information of the uncertainty of the success of the treatment, afterward went for and received the same.

"4. The plaintiff in accepting defendant as a patient for the treatment of catarrh of the nose or near thereby in effect said to defendant that he possessed and would exercise reasonable skill and judgment to discover the trouble and whether it was curable, and that if a cure was doubtful he would inform the defendant of such doubt and not conceal the same from the defendant.

"5. If at the beginning of the bill in question or at any time during the plaintiff's service the plaintiff was conscious of his inability to understand or properly treat the defendant's trouble, it was his duty to at once fully inform the defendant thereof; concealment by plaintiff of any ignorance of defendant's case in performance of unbeneficial service charged for would be a fraud, and for which service no compensation could be recovered.

"6. The plaintiff owed the defendant absolute

sincerity in accepting and keeping him as a patient. If the trouble with which defendant was suffering and for which he sought plaintiff's professional aid was in the frontal sinus over the defendant's right eye, and an operation was then necessary to relieve the trouble of the defendant, and the plaintiff knew this or could have known it by the exercise of reasonable skill and effort, then his treatment of plaintiff was unskillful and improper, and he ought not to recover any amount in this action.

"7. If the jury believe from the evidence that plaintiff failed to discover and cure the trouble of the defendant because he did not possess reasonable skill or because he did not exercise such skill, the finding should be for the defendant.

"8. The plaintiff cannot recover for the service rendered in this case merely because he may have performed such services with the permission or even at the request of the defendant and avoided giving defendant an express guarantee of a cure. The law does not permit a physician to recover compensation for worthless service to a patient even though he refrained from giving an express guarantee of a cure to defendant before and while performing the service sued for, if such service was negligent, unskillful, or was unfaithfully performed by plaintiff, as submitted in other instructions given to the jury at the request of the defendant.

"9. The court instructs the jury that they are not bound to accept the opinion of the doctors who have testified as experts in this case, but may give said opinions and each of them such weight as the jury may deem them entitled to, or altogether disregard such opinions in so far as the jury, from all the facts and circumstances in evidence, may believe such opinions unreasonable."

To which action and ruling of the court in giving to the jury said instructions numbered 1 to 9 inclusive at the request of the defendant, the plaintiff at the time excepted.

Over the objection and exception of defendant the court, of its own motion, instructed the jury as follows: "If nine or more of the jurors agree on a verdict in this case, they will sign such verdict and return the same into court." Thereafter the jury returned into court the following verdict: "We, the following jurors, find for the plaintiff and assess the damages at fifty dollars."

This verdict was signed by nine of the jurors, and judgment for plaintiff was rendered in accordance therewith.

The first question to be disposed of is that of the jurisdiction of this court over this appeal. The verdict was rendered by nine jurors, as authorized by an instruction given by the court of its own motion, which plaintiff insists was error, as not being authorized by the State Constitution, and that he properly raised that point in his motion for a new trial. In this way a constitutional question was properly raised which conferred jurisdiction of this appeal upon the Supreme Court. [Saxton National Bank v. Bennett, 138 Mo. 494.]

It was held in Gabbert v. Railroad, 171 Mo. 84, that the common law right of trial by jury, by which is meant a trial by twelve jurors who must render a unanimous verdict, might be so amended that nine jurors, concurring, could render a verdict. That decision has always been followed with approval, and recognized as the settled law of this State.

Dr. Dibble, a physician of over thirty years' experience as such, testified as an expert on behalf of defendant as follows:

"Q. Now, Doctor, I will ask you what the proper treatment is of an established case of disease of the

frontal sinus? A. If it becomes so bad that there was a disease of the frontal sinus there—depending, of course, upon the extent of that disease—it would be an opening into the sinus for the purpose of making applications directly to it; to get an established drainage, in other words.

"Q. Is that the only effective treatment in such a case? A. As a rule where it is especially bad, where there may be a necrosis or anything of that kind there.

"Q. Suppose that the patient has been suffering with the disease prior to the treatment of the physician, for two or three years, and there has been a constant discharge from the nose of inflammatory suppurative pus occurring not only when he had bad colds but when he didn't have bad colds, and that pus was of an offensive odor and of yellow color, what would it indicate? A. That there was a disease—chronic disease of the frontal sinus.

"Q. I will ask you to state to the jury whether a mere palliative treatment, such as sprays into the nose of tannin or of vaseline or any other palliative treatment of that sort, would be of any utility in such a case? A. If there was a disease in the frontal sinus itself, you could not reach it with a spray through the nose, only to mitigate the conditions here in the nose itself. In other words, this mucous surface here, enlargement of the bone here, would act as a dam. Of course, there is a natural opening there. If this is congested or the bone enlarged that way, it acts as a dam to prevent the drainage from that sinus, and treatment down here to relieve the inflammatory condition and congestion would allow drainage. If that drainage itself was not sufficient, then there is only one thing, and that would be an operative interference. That would depend then entirely upon the individual judgment of the operator or physician and the condition of the patient.

"Q. Now, suppose the patient in 1890 had all that

done; that is to say, that the physician who treated him—in this case Dr. Logan—established that drainage there by galvanic cautery. That is used to cauterize the part and open the parts up? A. Yes, sir.

"Q. Suppose that was done in 1890, and the drainage was there, but that the disease in the frontal sinus still continued, and that the pus was offensive, and was there all the time constantly, what would be the only thing then to do?"

This last question was objected to by plaintiff upon the ground that it was based upon a condition that had not been shown to exist in the case; but the question was overruled and the witness permitted to answer. His answewer was:

"It would be a matter of individual judgment then as to the operation. I think I, under the circumstances, should make an operation; but, as I said before, not seeing the case, I couldn't state positively. It would be purely a question of individual judgment as to the operation at that time."

The position of plaintiff respecting the admission of this testimony is that it was inadmissible because the ailment of defendant in 1890 was inflammation of the nasal cavity, while his trouble in 1892 was inflammation above that and extending into the sinus; that the doctor had relieved the first trouble by galvanic cautery, while there was no evidence tending to show that he had cauterized this canal leading to the sinus, where the last trouble existed; yet the question was based on the false premise that in 1890 he had cauterized the said canal.

We are inclined to the opinion that no foundation was laid upon which to bottom the question, but the answer to it was so indefinite and unsatisfactory that it could not possibly have prejudiced the plaintiff, and the judgment should not be reversed upon that ground alone.

A point is made upon the ruling of the court in

permitting defendant to testify,. over the objection of plaintiff, statements made by Dr. Logan, Sr., to him as to what his son, the plaintiff, had said with respect to the treatment of the defendant by plaintiff and other matters as to defendant's condition.

The evidence in question is as follows:

"Q.· I will get you to state to the jury whether Dr. Logan, Sr., Doctor W. G. Logan, the father of the plaintiff, told you in August, 1893, in his office in the Keith & Perry Building, in this city, while his son, Dr. Logan, Jr., was in New York, that there was no use for you to take treatment; that Jim—that is the plaintiff in this case—had long regarded your case as incurable? A. I think you asked me if Dr. W. G. Logan didn't say that to me in his office. It was in his son's office.

"Q. Well, in his son's office. A. Yes, sir; he said that to me.

"Q. Well, he stated to you at the time and place I have just stated that his son Jim had long regarded your case as incurable? A. Yes, sir; and that it was useless for me to take treatment.''

This testimony, as ruled by the court at the time, was admissible for the sole purpose of laying a foundation for impeaching the witness, and not as direct evidence, and some of the testimony, not necessary to point out, was clearly properly admitted for that purpose. Some of these statements were inadmissible for any purpose, but the objection seems to have gone to the testimony under discussion as a whole, and under such circumstances the objection was properly overruled. [State v. Johnson, 76 Mo. 121.]

The court gave nine instructions on the part of defendant, all of which, except the seventh, are criticised upon the ground that they fail to direct the jury to the evidence in the case as the basis for their finding. This, we think, a misapprehension, as some of the defendant's instructions restrict plaintiff's right to recover

upon the evidence before the jury, and it was not nec-
essary that all of the instructions should, in express
terms, repeat the same thing over again. All that was
necessary was that the instructions, when taken to-
gether, presented the case in a way such as to make
the jury understand that their verdict must be predi-
cated upon the evidence.

But whether defendant's instructions were in ac-
cord with the evidence and law of the case or not, such
instructions did not go to the question of damages at
all, but were confined to the issues involving plaintiff's
right to recover, which issues were found in his favor.
He is in no position to complain of the instructions, as
the verdict was for him. [Boggess v. Railroad, 118
Mo. 328.] In that case it was said: "The instructions
now under consideration did not go to the question of
damages at all, but were confined to the issues involv-
ing plaintiff's right to recover. Those issues were all
found for the plaintiff. The verdict established his
right to recover. How, then, is he prejudiced by those
errors? The plaintiff has no right to complain that
the verdict was in his favor; he does not, in fact, so
complain; the whole burden of his complaint is, and
can only be, that, having been so found, the jury gave
him inadequate damages for his injuries, and of any
error tending to produce this result he has a right to
complain; but not of errors prejudicial only to his
right to recover, when in fact he does recover. The
appellate courts of this State are prohibited by statute
from reversing the judgment of any court, except for
error committed by such court materially affecting the
merits of the action. [R. S. 1889, sec. 2303.] And this
court has uniformly disregarded such errors as pro-
duce no injury. [Gregory v. Chambers, 78 Mo. 294;
Pritchard v. Hewitt, 91 Mo. 547; St. Louis v. Lanigan,
97 Mo. 175; Stanley v. Railroad, 100 Mo. 435; McGuire
v. Nugent, 103 Mo. 161; Green v. St. Louis, 106 Mo.
454.]"

Notwithstanding the instructions, the jury found the defendant liable. The only possible objection which can be urged by plaintiff to the verdict is that the amount for the services rendered by him is not sufficiently large, but no objection is made thereto in the motion for a new trial. Besides, all instructions given with respect to the measure of damages which plaintiff was entitled to recover, in the event the issues were found in his favor, were given at his own request, and of which he cannot complain.

While some of the defendant's instructions are subject to verbal criticism, yet, when considered in connection with plaintiff's instructions, they presented the case very fairly to the jury.

Finding no error in the record which justifies a reversal of the judgment, it should be affirmed. It is so ordered.

All concur.