RICHARD WRIGHT, by his next friend, Appellant, v. FRANK QUAT-
TROCHI, SR., ET AL.—49 S. W. (2d) 3.

Division Two, April 8, 1932.

*Trusty & Pugh* and *Redick O'Bryan* for appellant: *John Cook* of
counsel.

*Rendlen, White & Rendlen* and *Hunter & Chamier* for respondent.

FITZSIMMONS, C.—Plaintiff, a minor, suing by his next friend, brought this action in the Circuit Court of Randolph County for damages for personal injuries caused by a truck of defendants in Hannibal in Marion County. Defendants are copartners and are engaged in the produce business in Hannibal and also in Moberly, Randolph County. There was judgment for defendants, and plaintiff's motion for a new trial having been overruled, he appealed. The damages claimed fix our jurisdiction. Plaintiff's injuries are permanent and painful and his disability is all but total. The only question in the case was the liability of defendants.

I. Plaintiff assigns as error a given instruction to the effect that if the jurors believed from the evidence that the injuries sustained by the plaintiff were the result of an accident or misadventure and not the result of negligence on the part of the defendants as defined in other instructions, then the jurors should find for the defendants. The propriety of this instruction is to be judged by the facts in evidence.

Plaintiff was injured on October 4, 1928, at or shortly before five o'clock in the afternoon while it was yet daylight in an alley near Broadway in Hannibal. The alley runs from Church Street on the south to Broadway on the north. It is sixteen feet wide and paved. The Minor garage occupies the first floor of a building at the southwest corner of Broadway and the alley. It runs back southwardly along the west line of the alley, a distance of sixty-seven feet. The garage has an alley door very close to the rear of the building, that is to say nearly sixty-seven feet from Broadway. The door is nine and one-half feet wide and there is a runway from the garage down into the alley. Automobiles enter and leave the garage by this door-

way. The Hannibal Milling Company has an office at the southeast corner of Broadway and the alley. This building runs southwardly along the east line of the alley about forty feet. The garage and the milling office face each other across the alley as far back from Broadway as the shorter building, the milling office, extends. There are windows on the alley side of the milling office. The property of the milling company across the alley from the back door of the garage is not improved. But about twenty feet south of the door of the garage, that is to say, that much further away from Broadway, the milling company has an oil house. These local facts will aid the understanding of the testimony.

Defendants' truck had a capacity of three and one-half tons, weighed over 9000 pounds and had a governor which restricted its speed limit to seventeen miles an hour. It was over twenty-three feet long and seven feet, eight inches wide. At the time of the accident the truck, driven by a colored chauffeur, was moving through the alley northwardly toward Broadway. At the junction of the alley with Broadway there was a stop signal which, witnesses for both sides testified, the police of Hannibal caused to be observed.

At the time of the accident, plaintiff was eight years old. He owned a scooter, and his young companion, Jack Hedges, owned a bicycle. The plaintiff, Richard Wright, was riding the bicycle about the floor of the garage while young Hedges was playing with the scooter somewhere on the mill property across the alley from the garage. Plaintiff decided to get his scooter from Hedges and he testified that he rode out of the door of the garage into the alley in search of Hedges. When he got into the alley, he saw the truck at the oil house about twenty feet south and approaching northwardly toward him. The driver of the truck was looking toward him or in his direction. He rode the bicycle northwardly in the same direction as the truck was going toward Broadway, but he went toward the east or mill-office side of the alley to get out of the way of the truck. The truck came on and hit him. He did not know how far he had gone toward the mill office and he did not remember whether he was on the bicycle or had gotten off, when he was hurt. He did not know what part of the truck hit him, nor what happened to him, nor whether the truck knocked the bicycle from under him, nor whether the whole truck passed over him nor whether any of the wheels of the truck rolled over his body. Everything was black, said he. Mr. Richards, an officer of the Hannibal Milling Company, was in his office overlooking the alley, when he was informed that plaintiff had been hurt. He ordered out his automobile and took plaintiff in the car to a hospital. Mr. Hedges, father of Jack Hedges, John Tuttle, chauffeur of the truck, and policeman Featherstone went along. Mr. Richards testified that, on the way to the hos-

pital, plaintiff said that he ran "right under the side of the truck" and that the accident was not the fault of the truck driver. In rebuttal plaintiff denied that he made these statements.

John Tuttle, driver of the truck, testified that when he got to the garage building he was traveling five or six miles an hour and was looking ahead and did not see the boy. The first thing he felt was a jar and he heard the child scream, and he stopped and got out and picked the boy up. The boy was lying three or four feet from the back end of the truck and the bicycle was lying over about the middle of the truck, back of it. He had no notice or knowledge that the boy was in the alley. When he felt the jar the cab of the truck had passed the Minor garage. J. B. Featherstone, a Hannibal policeman, testified that, on the way to the hospital in Mr. Richards' car, Tuttle said: "I hit him, and I want to take him to the hospital." Tuttle denied that he made this statement. Plaintiff offered in evidence a written statement of Tuttle which differs but little from his testimony as narrated except for repetition of the phrase, "I hit him." At one point he said: "I heard some one scream. I looked out of the cab window and saw that I had hit a boy who was riding a bicycle." Again he said in the statement: "Now after I hit the boy my car stopped nine or ten feet from the north face of the door at the back end of the garage." Tuttle testified that the statement was wrong, that he signed it without reading it.

C. R. Mahan, also an officer of the Hannibal Milling Company was walking south in the alley toward the oil house when the truck passed him going north toward Broadway traveling eight or ten miles per hour. He heard the boy scream and turned and saw the truck stop about ten feet beyond the garage door. But he continued to the oil house. He did not see the accident nor observe where the boy was lying.

Mr. Wagner, a railroad representative, was in the office of the milling company, talking to Mr. Richards when he heard the boy scream. He saw the boy in a reclining position on the alley paving in the doorway of Minor's garage. The lad was nearer to the garage side than to the mill side of the alley, and about ten feet behind the truck which was standing. He did not see the accident.

T. B. Arnold, a bookkeeper in the office of the milling company, heard a boy cry out. He looked out of an office window on the alley side and saw defendants' truck stopped in the alley, with the cab opposite the window from which he was looking. He did not see the accident. Plaintiff argues from Mr. Arnold's testimony that the boy was struck sixteen and one-half feet north of the north side of the garage door. The foregoing is a summary of all of the testimony by which the accident instruction is to be judged.

Plaintiff in his petition alleged six specifications of negligence and he also pleaded the humanitarian doctrine. He submitted the case

to the jury on the last theory alone. The substance of plaintiff's humanitarian instruction is that if the jury found from the evidence that Richard Wright was in the alley before his injury in a position of imminent peril, and if the driver of defendants' truck knew or should have known that Wright was so imperiled, in time to have stopped the truck or to have slackened its speed or to have turned it to one side, and by so doing to have averted the injury to Wright, and if the jury further found that the driver of the truck failed to exercise the required degree of care to do those things, and that his failure so to do directly caused or contributed to the injuries of Wright, then the jury should return a verdict in favor of plaintiff, even if they further found that Richard Wright failed to exercise for his own safety such care as a child of his age, experience and intelligence would ordinarily exercise under the same or similar circumstances, and if such failure caused him to be in such peril. The court gave four of the instructions requested by defendant. Two of these will be noticed later. But we may be aided in ruling the error assigned to the accident Instruction L by noting here that one of the four instructions given at the request of defendants is as follows:

"J.

"The court instructs the jury that if the injury mentioned was due to the act of the plaintiff boy, Richard Wright, riding on a bicycle by suddenly and unexpectedly (if you so find) coming out of the door of the Minor garage opening upon the alley in question and running into, under or against the automobile truck, if he did, without any notice to or knowledge of the driver thereof or of the boy's presence or that the boy was going to suddenly run into, against or under the automobile truck, and said driver by exercise of the highest degree of care could not have so known, plaintiff cannot recover on that ground."

This last instruction is supported by the evidence of plaintiff's admissions made to Mr. Richards on the way to the hospital and by the defendants' answer which pleads generally that plaintiff and his parents contributed by their negligence and carelessness to the injury of plaintiff.

■■ We are of opinion that the trial court erred in giving the accident Instruction L. Appellant relies upon Hogan v. Kansas City Public Service Company (Mo.), 322 Mo. 1103, 19 S. W. (2d) 707, to sustain this assignment of error. Respondent would distinguish the facts of this case and thereby avert the force of the Hogan case. But the principles of law governing accident instructions are clearly defined in the Hogan case, and they bring within their operation the instant case. In Hogan v. Kansas City Public Service Company the facts were that plaintiff, a Kansas City policeman, was riding in a patrol wagon southwardly on Grand Avenue in Kansas City. At a narrow point between street car loading platforms in the street an

180

old man crossed in front of the patrol wagon and the chauffeur swerved the vehicle and crashed into defendants' street car. Plaintiff Hogan was injured. He appealed from a judgment for defendant, and assigned as error the giving of an accident instruction. On this point the court en banc said (19 S. W. (2d) l. c. 712):

"Granting, without deciding, the foregoing conclusions of fact are allowable under the evidence, the conclusions of law do not follow. It will be noticed the respondent assumes an accident instruction is proper, if the evidence permits an inference that the parties (participants or litigants) were *innocent of negligence*. This is not the law, unless there is something in the record tending to show the casualty resulted from an *unknown cause*. It is not every true accident case in which the court may instruct on accident. When, as here, the misadventure resulted from known actions of known persons and things, the giving of an accident instruction is error by the great weight of recent authority in this State.

"The word 'accident,' in popular acceptation and sometimes in law, may denote an occurrence arising without intent or design, or even from the carelessness of man; but in the law of negligence it signifies an event resulting in damage or injury, proceeding from an unknown cause, or from a known cause without human agency or without human fault. [1 C. J. p. 390 et seq.; 20 R. C. L. p. 17 et seq.] The essential requirement is that the happening be one to which human fault does not contribute. [Hoffman v. Peerless White Lime Co., 317 Mo. 86, 102, 296 S. W. 746.] But, when the cause of accident is known, it is better to instruct the jury on the specific issues of fact presented, and so the practice has grown up under our case law of limiting the giving of accident instructions to instances in which there is evidence tending to show the cause is unknown— on the theory that the contrary and more abstract course would confuse the jury." [Authorities cited.]

▮ In the instant case, it clearly appears that defendants' truck was in motion in the alley, that plaintiff on the bicycle rode out of the garage into the alley and was injured by the truck. Either he rode into the alley ahead of the truck and was overtaken and run down by it, or he rode into the alley while the truck was passing the garage door, and he ran under the side of it. The first theory of the accident was presented to the jury by plaintiff's humanitarian instruction and the second theory was hypothesized in defendants' Instruction J. The two theories exclude the possibility of an unknown cause or of a known cause without human agency or fault. Under the plaintiff's theory defendants were at fault, and under defendants' theory plaintiff himself alone was negligent.

Defendants seek to escape the effect of the Hogan case by arguing that just how the accident happened is in grave doubt and that the record supports the inference that the mishap was due to an un-

assigned cause. But their mental speculations on these lines do not carry the case into the field of the unknown contemplated by the Hogan case. Cases cited by defendants either are not in point or they have been criticised in the Hogan case. Henry v. Grand Ave. Ry. Co., 113 Mo. 525, 21 S. W. 214, was an action for damages for personal injuries claimed to have been caused by the negligent act of defendant's servant in tripping plaintiff by throwing a crow bar between her feet while she was crossing the street. The defense was that she stumbled and fell, herself, and that the crow bar did not touch her. Plaintiff appealed from an adverse judgment and complained that an accident instruction should have used the words "unavoidable" or "inevitable" instead of "merely" to qualify the word "accident." To the same effect was the objection to the form of an accident instruction in Feary v. Metropolitan Ry. Co., 162 Mo. 75, 62 S. W. 452. In the case of Yawitz v. Novak, 286 S. W. 66, cited by defendants, plaintiff's finger was injured when defendant closed an automobile door. Although Division One of the court approved an accident instruction in that case, the Court en Banc in the Hogan case expressed the opinion that the instruction in the Yawitz case was error. In Lehnerts v. Otis Elevator Co., 256 S. W. 819, plaintiff suffered eye injuries caused by wet plaster with which another workman, not employed by defendant, was working. Plaintiff complained of two accident instructions upon the ground that accident was not pleaded. So, too, other cases cited by defendants, fail to weaken the authority in this case of Hogan v. Kansas City Public Service Company.

II. Plaintiff assigns as error the action of the trial court in sustaining an objection to plaintiff's offer to prove by Roy Wright, adoptive father of plaintiff, admissions against interest made to him by Leo Quattrochi, a defendant and one of the copartners. The purported admissions were that, on the morning after the accident Leo Quattrochi told the witness that he, Quattrochi, had talked to the driver and Quattrochi said that it was the driver's fault, and Quattrochi wanted the parents to get a special nurse and do everything they could do, and he, Quattrochi, would pay for it. The court in sustaining the objection to this offer observed that it was not shown that Quattrochi knew anything personally about the accident. Defendants' objection was that it was hearsay. Plaintiff further offered to prove by Mr. Wright that later he presented a nurse's bill to Mr. Quattrochi and the latter said that he had been ordered by the insurance company not to pay it. The objection to this further offer was sustained on the same grounds. It was ruled by this court in 1847 in Sparr & Green v. Wellman, 11 Mo. 230, that "An admission is the statement of a fact against the in-

terest of a party making it—but it is not essential to constitute it an admission, that the fact should have come under the personal observation of the defendant." In that case whatever information the declarant had of a larceny in his hotel was hearsay. And it is settled law that where the action is founded upon a partnership l'ability as here the admission of a fact by one partner is evidence against all. [Adair v. Kansas City Terminal Ry. Co., 282 Mo. 133, 220 S. W. 920.] But the statements accredited to Mr. Quattrochi were not admissions of fact but mere conclusions of law that the accident to plaintiff was the fault of the driver of defendants. As was held in Crockett v. Morrison, 11 Mo. 3, "it is well settled that the admissions of a party in relation to a question of law is no evidence." And this is quoted with approval in State ex rel. v. Smith et al., 150 Mo. 75, 51 S. W. 713. It is true that in Grodsky v. Consolidated Bag Co., 324 Mo. 1067, 26 S. W. (2d) 618, this court approved the ruling of the trial court in permitting plaintiff to be cross-examined touching an admission by her that, in her opinion some one other than defendant was entirely responsible for the accident. But Mr. Quattrochi was not a witness in this case. If the testimony of Mr. Wright as to Mr. Quattrochi's admissions had been admitted and there had been judgment for plaintiff, the testimony of Mr. Wright would not be held to constitute substantial evidence in ruling a demurrer. [Layton v. Chinberg, 282 S. W. 434.] This assignment of error is ruled against plaintiff.

■ III. The court of its own motion gave Instruction 7 as follows: "The court instructs the jury that the burden is upon the plaintiff to prove by the greater weight of all the evidence that the injuries complained of were caused by negligence of defendants' motor truck driver as set forth in other instructions."

Plaintiff complains that this instruction was error because it placed on him the burden of proving his case by the greater weight of all the evidence. He relies upon Gillette v. Laederich (Mo. App.), 242 S. W. 112. In this case there were two instructions. In one the court placed upon plaintiff the burden of proving his case "by the greater weight of credible evidence." The other instruction informed the jury that "by greater weight of credible evidence is meant all of the evidence in the case." The error was held to lie in the ambiguity of the two instructions read together. Upon a retrial the instruction will be improved if, instead of "all the evidence" it mentions "the greater weight of the evidence," and if it defines the phrase in the accepted form.

■ IV. Plaintiff contends that the court erred in giving Instruction J at the request of defendant. We have quoted that instruction in

our examination of the accident instruction. The jury was told by Instruction J that if the injury of plaintiff was due to his act in riding on his bicycle out of the door of the Minor garage into the alley and running into, under or against the automobile truck without notice to or knowledge of the driver of the boy's act and without notice or knowledge that the boy was about to do, without notice or knowledge of the boy's presence, and if the driver, by the exercise of the highest degree of care, could not have so known, the plaintiff could not recover on that ground. The first objection is that this instruction does not confine the jury to the evidence. Other instructions direct the jury to the evidence, and all of the instructions, taken together, made clear to the minds of the jury that their verdict should be based upon the evidence. This objection therefore is without merit. [Logan v. Field, 192 Mo. 54, 90 S. W. 127; Montague Compressed Air Co. v. City of Fulton, 166 Mo. App. 11, 148 S. W. 422.] But the instruction clearly was intended to submit to the jury the issue of plaintiff's negligence as the sole cause of his injury. In our review of the objection to the accident instruction we have pointed out that plaintiff's humanitarian instruction and defendants' Instruction J present the two possible theories of the case. But in another trial the instruction should be modified so as to require the jury in more express terms to find that the negligent acts of the plaintiff mentioned in the instruction were the sole cause. While this instruction is not subject to the criticism which this court made of an instruction in the case of Causey v. Wittig, 321 Mo. 358, 11 S. W. (2d) 11, yet, upon a retrial heed should be given to the emphasis which the opinion in that case laid upon the distinction between the issues of sole and concurrent acts of negligence.

V. Defendants' Instruction D withdrew from the consideration of the jury for want of evidence the assignment of negligence founded upon failure of defendants to give warning of the approach of the truck. Defendants' Instruction G for a like reason withdrew the issue of the defective condition of the brakes. Plaintiff complains of these withdrawal instructions. The injured boy testified that when he rode out of the garage into the alley, he saw the truck at the oil house, over twenty feet away. So he turned his bicycle toward Broadway in the direction in which the truck was going, and at the same time he wheeled over toward the mill side of the alley. He said that he knew the truck was coming whether the horn was sounded or not because he saw the truck. There was no evidence whatever of defective brakes. The submission of the case to the jury upon the humanitarian theory was in effect an abandonment by plaintiff of these two grounds of negligence. We cannot say that, under the facts in evidence, these instructions tended to confuse or to mislead the jury. The assignment is ruled against plaintiff.

VI. Plaintiff says that the court erred in rulings made against him during the final argument of the case to the jury. Counsel for defendant, in addressing the jury, made a sentimental appeal to which plaintiff made no objection but which he sought to answer in the closing speech by statements outside the record. Upon objection the court cautioned plaintiff to "argue the evidence and instructions in this case." There is no element of error in this ruling.

VII. But defendant urges that the verdict was manifestly for the right party and should not be disturbed. He cites authorities in one of which the rule is thus stated (Moloney v. Boatmen's Bank, 288 Mo. 458, 232 S. W. 133):

"When an erroneous instruction is given and the trial results in favor of the party at whose instance it was given, the presumption is that the error was prejudicial. But when the verdict is manifestly for the right party and a different result could not have been reached by the jury under the law, it should not be disturbed because of such erroneous instruction." In Trainer v. Sphalerite Mining Co., 243 Mo. 359, 148 S. W. 70, this court ruled that "error in instructions and in the admission of evidence for defendant is harmless as to a plaintiff who, as a matter of law, failed to make out a case, those errors merely affecting the manner of the submission of the case, and not his substantial rights."

Would we be warranted in saying under the facts presented that plaintiff, a lad of eight years at the time of his injury, when he was at play in and near a public alley, much traveled by heavy motor vehicles and by persons afoot, is not harmed in his substantial rights by the erroneous "accident" instruction, because as a matter of law, he failed to make out a case? Chaar v. McLoon, 304 Mo. 238, 263 S. W. 174, not heretofore cited, bears a close resemblance to the instant case. There a boy was killed by an automobile, not however in a sixteen-foot alley, but in a public street, the driveway of which was over thirty-eight feet wide. There, as here, an accident instruction was given under evidence which raised alone the issue of negligence of the defendant or of the boy. In that case the judgment in favor of defendant was reversed for the error of the trial court in giving the accident instruction. We cannot rule otherwise in the instant case, for it presents submissible issues.

It is accordingly ordered that the judgment be reversed and the cause remanded. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All of the judges concur.