**CHANDEYSSON ELECTRIC COMPANY,**
a Corporation, Plaintiff-Appellant,

v.

**Robert R. WOLLWEBER, Defendant-Respondent.**

No. 32047.

St. Louis Court of Appeals.
Missouri.

Dec. 21, 1965.

Armstrong, Teasdale, Roos, Kramer & Vaughan, Bruce E. Woodruff, John P. Emde, Charles E. Dapron, Fred Leicht, Jr., St. Louis, for plaintiff-appellant.

DOERNER, Commissioner.

Plaintiff's action is on an alleged debt of $933.35, denied by defendant, who counterclaimed for $2530.53 on the same theory. The jury returned a verdict for defendant on plaintiff's cause of action and for plain-

tiff on defendant's counterclaim. Only plaintiff has appealed. After plaintiff's brief had been filed defendant advised his trial counsel by letter, which was filed with us, that he did not desire to expend the money necessary for the filing of a brief or for representation by counsel.

It appears from the pleadings and the evidence that the respective claims for indebtedness with which we are concerned arose out of plaintiff's employment of defendant for the period from July 5, 1960 to July 18, 1961. Plaintiff alleged in its petition that it had loaned the defendant the sum of $1,000 on June 24, 1960, and an additional $713.53 on September 12, 1960, on defendant's promise to repay such loans; that defendant made a partial payment of $688.53 on or about December 31, 1960; that at the time defendant's employment was terminated there was due him $91.65 for three days salary, which plaintiff applied and credited on defendant's indebtedness; and that the sum of $933.53, together with interest, remained due, for which it prayed judgment. As stated, defendant in his answer denied that he owed plaintiff any money, and in his counterclaim pleaded that plaintiff was indebted to him for various expenses totalling $430 growing out of an employment which began in 1958. However, defendant's own evidence disclosed that these expenses were incurred in connection with his employment by a firm other than plaintiff and the trial court ruled that plaintiff's alleged oral assumption of such indebtedness was violative of the Statute of Frauds and that defendant could not introduce evidence relative to them. Since defendant has not appealed the merits of the court's action is not before us. In the remaining part of his counterclaim defendant alleged that on or about July 1, 1960, plaintiff " * * * agreed to pay defendant for defendant's expenses in coming to St. Louis from St. John, Quebec, and for defendant's family moving expenses, and for settling expenses * * *." These expenses defendant itemized as: $688.53 for moving his furniture; $171 for his flights between St. John, Quebec and St. Louis; $333 for his meals from July 5, 1960 to July 30, 1960; $150 for the rental of a car during that period; and $300 expended by his family until August 17, 1960. Defendant further alleged that in addition to employing him, at a salary of $11,000 per year, plaintiff also agreed to pay him an additional two weeks termination pay, but that upon his discharge plaintiff failed to do so, for which $458.00 was due him. Plaintiff, in turn, by its reply denied that it was indebted to defendant in any amount.

Plaintiff asserts that the trial court abused its discretion in refusing to grant it a new trial because the verdict against it on its claim was contrary to the overwhelming weight of the evidence; and that certain instructions given on behalf of defendant were prejudicially erroneous. The first complaint requires a review of the evidence.

Robert R. Lamkin, plaintiff's president, testified that on its behalf he employed defendant in June, 1960, as its plant superintendent, at a salary of $11,000 per year; that defendant asked for an advance on his salary, and on defendant's promise to repay, plaintiff loaned defendant $1,000; that defendant had his furniture shipped from St. John's, Quebec to St. Louis, at a cost of $688.53, and insured it, the premium being $25, which sums plaintiff paid on the defendant's promise to reimburse it; that defendant paid plaintiff the $688.53 for the freight, but never repaid any part of the $1,000 loaned him or the $25 for the insurance; and that defendant's employment, which began on July 5, 1960, was terminated on July 18, 1961, at which time three days salary totalling $91.53 was due defendant, for which he was given credit. Lamkin identified and there was introduced in evidence plaintiff's check to defendant for $1,000, dated June 24, 1960, as well as the invoices for the freight and insurance premium. In his cross-examination, as well as in his rebuttal, Lamkin denied that he had promised defendant to pay any of the expenses arising out of defendant's move to St. Louis, and also denied that he had

agreed to pay defendant two weeks termination pay. Called by plaintiff, William J. Sturm, a partner in the firm of Haskins & Sells, certified public accountants, testified that in connection with its audit of plaintiff's books as of December 31, 1960, it obtained a written confirmation from defendant, identified and introduced, that as of that date he owed plaintiff the sum of $1025.00

In his own behalf defendant related the negotiations with Lamkin which culminated in the agreement that plaintiff would employ him at a salary of $11,000 a year. His only testimony regarding any promise by Lamkin to pay his expenses was that Lamkin wanted him to move to St. Louis as promptly as possible and that: "* * * I had to ask for expenses and I have to fly to Canada, I have to fly back, I have to go get my family again, drive my car down here, have everything moved, he says, 'Don't worry about anything, we will take care of you, you have to trust somebody, don't worry about that, that will be taken care of.' " Defendant stated that his expense in flying back and forth between St. Louis and Canada was roughly $171; that his expenses for lodging and meals in St. Louis until his family arrived were about $333; that during the same period he rented an automobile at a cost of $150; that the expense of flying to Quebec and driving his family to St. Louis was about $300; and that the cost of moving his furniture was $688.53. He also testified that he did not receive any severance pay when he was discharged, but a careful and repeated search of the record fails to disclose any testimony by defendant or anyone else that Lamkin or plaintiff had ever agreed to pay defendant any severance pay. On cross-examination defendant admitted receiving the $1,000 from plaintiff but explained that it was an advance by plaintiff towards his various expenses incurred in moving to St. Louis. He conceded that he had signed the confirmation slip given Haskins & Sells but stated that it must have been among other papers he frequently signed as plant superintendent and that he signed it without reading it.

There is no merit in plaintiff's argument that the trial court abused its discretion in overruling its motion for a new trial because the verdict against plaintiff on its claim was against the overwhelming weight of the evidence. The vital issue in plaintiff's claim was whether the $1,000 admittedly paid to defendant was a loan, which defendant was obligated to repay, as Lamkin testified, or whether it was an advance against the defendant's various expenses incurred in moving to St. Louis, as defendant testified. Thus as to that issue there was a sharp conflict in the evidence. Plaintiff deprecates the defendant's testimony regarding the defendant's expenses, and refers to it as feeble, obscure and self-contradictory. The weight of such testimony, however, was initially a matter for the jury, and subsequently a matter for the trial court in passing on plaintiff's motion for a new trial. While an appellate court does have the power in an action at law to grant another trial on the weight of the evidence if the trial court has abused or arbitrarily exercised its discretion by refusing to do so, Sapp v. Key, Mo., 287 S.W.2d 775; King v. Kansas City Life Ins. Co., 350 Mo. 75, 164 S.W.2d 458, it is clear that the appellate policy in law cases is to abide by rulings of trial courts on weight of evidence assignments. Widener v. St. Louis Public Service Co., 360 Mo. 761, 230 S.W.2d 698; Hemminghaus v. Ferguson, 358 Mo. 476, 215 S.W.2d 481; King v. Kansas City Life Ins. Co., supra. In view of the sharp conflict in the evidence as to the reason the $1,000 was paid defendant it is obvious that the trial court did not abuse or arbitrarily exercise the discretion vested in it. Gould v. M. F. A. Mut. Ins. Co., Mo.App., 331 S.W.2d 663.

However, plaintiff is on firmer ground in its complaints that defendant's instructions numbered 2 and 3 were prejudicially erroneous. By Instruction No. 2 the jury was told that if it found that plain-

tiff had agreed to pay, "the moving expenses of the defendant and his family from Canada to St. Louis, Missouri, and other incidental expenses mentioned in the evidence, and further, to pay two (2) weeks termination pay if released," then it should find in favor of defendant on his counterclaim" and against the plaintiff Chandeysson Electric Company, a corporation." In the first place, as we have pointed out, there was no evidence that plaintiff had agreed to pay any termination pay. The giving of an instruction which is not supported by the evidence is erroneous as misleading and confusing. Samuels v. Klimowicz, Mo., 380 S.W.2d 418; Switzer v. Switzer, Mo., 373 S.W.2d 930. Furthermore, the reference to the expenses which defendant claimed the plaintiff had agreed to pay, particularly in the use of the phrase, " * * * and other incidental expenses mentioned in the evidence * * *," was too general and abstract to furnish any guide to the jury in determining the nature and extent of plaintiff's alleged agreement, and in reaching a verdict. Baerveldt & Honig Const. Co. v. Szombathy, 365 Mo. 845, 289 S.W.2d 116; McAlpine Co. v. Graham, Mo.App., 320 S.W.2d 951; Phillips v. Todd, Mo.App., 180 S.W. 1039. What expenses were meant by that phrase, and the basis for the submission that plaintiff had agreed to pay them, is far from clear. The only reference to the words "incidental expenses" was by defendant in detailing the tips and charges for limousine service which he had paid on his flights to and from Canada. Defendant, however, in using that term may have had in mind the cost of meals and living expenses for himself and his family after reaching St. Louis (what he described in his petition as "settling expenses" as distinguished from "moving expenses"), for a reference to such expenses is made in his Instruction No. 3. If that was defendant's theory as to plaintiff's agreement (and assuming, without deciding, that defendant's testimony regarding what Lamkin promised would have justified such a submission), the jury should have been required to find that fact by language more specific and definite than the phrase employed. Such words gave the jury a roving commission to speculate as to the terms of the claimed agreement. Green v. Ralston Purina Co., Mo., 376 S.W.2d 119. Lastly, the concluding phrase that the jury should find in favor of the defendant on his counterclaim and against the plaintiff was confusing and misleading. It did not limit the jury to a finding in favor of defendant and against plaintiff on defendant's counterclaim, and may well have been understood by the jury as a direction that if it found for defendant on defendant's counterclaim it should find against the plaintiff on plaintiff's cause of action.

■ By defendant's Instruction No. 3 the jury was told that if it found for the defendant on his counterclaim it might allow him such sums as it found from the evidence he had incurred in moving himself and his family from Canada to St. Louis, " * * * for the expense incurred by defendant and his family in St. Louis" and "for two weeks termination pay in the amount of $458.00 * * * minus the sum of $1,000.00 advanced to defendant." We have already pointed out that defendant's Instruction No. 2 did not require the jury to find that the plaintiff agreed to pay the "settling" expenses incurred by defendant and his family in St. Louis, and Instruction No. 3 was therefore erroneous in assuming that such damages might be allowed. Roberts v. Emerson Electric Mfg. Co., Mo., 338 S.W.2d 62. Also, as was true of Instruction No. 2, there was no evidentiary support for the allowance of termination pay. And lastly, the direction to the jury to subtract from the amount allowed defendant, " * * * the sum of $1,000.00 advanced to defendant" assumed that the $1,000 had been paid to defendant as an advance against his expenses, without requiring the jury to find that such was the fact. Whether that sum had been paid as a loan to defendant or as an advance against his expenses was, as we have noted, a highly controverted and material issue. The as-

sumption of a controverted, material issue is prejudicial error. Watt v. St. Louis Public Service Co., Mo., 354 S.W.2d 889; Roberts v. Emerson Electric Mfg. Co., supra.

It will be recalled that the jury's verdict was in favor of plaintiff on defendant's counterclaim. Had defendant's instructions confined the issues therein submitted to defendant's counterclaim plaintiff would be in no position to complain of any errors in defendant's instructions. For the rule is that a party may not complain about his adversary's instructions when the jury's verdict on the issues submitted by the instructions were decided in the complaining party's favor. Logan v. Field, 192 Mo. 54, 90 S.W. 127; Robbins v. Robbins, Mo., 328 S.W.2d 552. But as we have pointed out, defendant's Instruction No. 2 in effect directed a verdict against plaintiff on its cause of action as well as for defendant on his counterclaim. In such a case the rule has no application and the complaining party is entitled to relief. Dawley v. Hoy, Mo., 341 S.W.2d 111.

It is therefore obvious that the judgment against plaintiff on its cause of action must be reversed and a new trial granted it on its claim. Since defendant did not appeal it is equally apparent that the judgment against him on his counterclaim has become final; but this is not to say that on a retrial of plaintiff's claim the defendant, if so advised, may not interpose by way of defense his contention that the $1,000 was paid him as an advance against those expenses he claims plaintiff agreed to pay.

The judgment should be reversed and the cause remanded for a new trial on plaintiff's claim, and the verdict in favor of plaintiff and against defendant on defendant's counterclaim should be held in abeyance pending the determination of plaintiff's claim; and upon such determination one final judgment should be entered disposing of the rights of both parties.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, judgment is reversed and cause remanded to the court with directions to grant plaintiff a new trial on plaintiff's claim and to hold in abeyance the verdict in favor of plaintiff and against defendant on defendant's counterclaim until the determination of plaintiff's claim; and upon such determination to enter one final judgment disposing of the rights of both parties.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.