**Helge SZASZ, Individually and as Personal Representative of the Estate of Frank Szasz, Appellant,**

v.

**Nalini TELLA, M.D., Respondent.**

**No. WD 55039.**

Missouri Court of Appeals, Western District.

Nov. 3, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 22, 1998.

Application for Transfer Denied Feb. 23, 1999.

William H. Pickett, David T. Greis, Kansas City, for Appellant.

William A. Lynch, David C. Trowbridge, Kansas City, for Respondent.

Before SMART, P.J., and ELLIS and HOWARD, JJ.

HOWARD, Judge.

Helge Szasz appeals from the trial court's judgment in favor of Dr. Nalini Tella on Szasz's wrongful death claim arising out of Dr. Tella's allegedly negligent medical care and treatment of her husband, Frank Szasz. Mrs. Szasz raises four points on appeal. First, she contends the trial court erred in allowing the introduction of evidence that 1) Dr. Tella had brought a wedding present for the Szaszes to their home; 2) Mrs. Szasz liked Dr. Tella; 3) Dr. Tella had never been rude or disrespectful to Mr. or Mrs. Szasz; and 4) Dr. Kopp, Mr. Szasz's other physician, had given the Szaszes a wedding present. Second, Mrs. Szasz argues that the trial court erred in allowing the introduction of evidence that her counsel had used a subpoena to require Dr. Tella to bring evidence to trial. Third, Mrs. Szasz claims the trial court erred in permitting redirect examination of Dr. Tella's expert witness, Dr. Heibert, about a pay dispute Dr. Heibert had with Mrs. Szasz's counsel in a separate case. Fourth, Mrs. Szasz claims that the cumula-tive effect of the trial court's errors warrants reversal and remand for a new trial.

We affirm.

### Facts

A brief summary of the facts is presented here. The facts will be further recited as warranted by the points on appeal.

Frank and Helge Szasz were married in 1994, several months before Frank Szasz's death on March 10, 1995. Frank Szasz's primary physicians were Dr. Kopp and Dr. Nalini Tella. Dr. Tella examined Frank Szasz on or about February 27, 1995, and she noted some spots on his chest and abdomen. At trial, Helge Szasz contended that Dr. Tella failed to respond to telephone calls and failed to examine Frank Szasz between February 28 and March 2, 1995. Dr. Tella examined Frank Szasz on March 3, 1995 and sent him to the University of Kansas Medical Center. On March 10, 1995, Frank Szasz died while at the University of Kansas Medical Center from a rare condition known as TEN (or TENS). On August 3, 1996, Mrs. Szasz filed her petition, alleging medical negligence on the part of Dr. Tella. The case was tried before a jury. Following trial, the jury found in favor of Dr. Tella. This appeal followed.

### Point I

The first point on appeal is that the trial court erred in allowing the introduction of evidence that 1) Dr. Tella had brought a wedding present for the Szaszes to the Szasz home; 2) Mrs. Szasz liked Dr. Tella; 3) Dr. Tella had never been rude or disrespectful to the Szaszes; and 4) Dr. Kopp, Mr. Szasz's other physician, had also given the Szaszes a wedding present. Mrs. Szasz contends that the evidence was irrelevant, immaterial to any issue before the court, and prejudicial.

Dr. Tella correctly asserts that Mrs. Szasz did not object to the testimony that she had brought a wedding present for the Szaszes to their home, that Dr. Tella was nice to Mrs. Szasz and had never been rude or disrespectful to her, and that Dr. Kopp had brought the Szaszes a wedding present. Mrs. Szasz's failure to object to this testimony elicited at

trial waives any complaint about the testimony she might have on appeal. *Bowls v. Scarborough,* 950 S.W.2d 691, 698 (Mo.App. W.D.1997).

The only portion of Mrs. Szasz's testimony that was properly objected to at trial was her testimony that she liked Dr. Tella. Therefore, we consider whether the trial court erred in admitting this portion of the testimony. The trial court's determination of relevancy and its ruling on the admissibility or exclusion of evidence is accorded substantial deference and will not be disturbed absent an abuse of discretion. *Carter v. Wright,* 949 S.W.2d 157, 162 (Mo.App. W.D.1997). "The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." *Id.* (quoting *Oldaker v. Peters,* 817 S.W.2d 245, 250 (Mo. banc 1991)). We find that the trial court did not abuse its discretion in admitting this testimony.

Even assuming, *arguendo,* that the testimony was irrelevant, the placing of irrelevant evidence before a jury is not a ground for reversal unless it prejudices the complaining party or materially affects the result or outcome of the trial. *Choate v. Natvig,* 952 S.W.2d 730, 736 (Mo.App. S.D.1997). Prejudicial error occurs only when objectionable evidence affects the result or outcome of the trial. *Id.* Mrs. Szasz has failed to demonstrate that her comment that she liked Dr. Tella prejudiced her or materially affected the outcome of the trial, especially in light of the fact that Mrs. Szasz's counsel had already elicited testimony from Mrs. Szasz that Mr. Szasz liked Dr. Tella very much. Point denied.

### Point II

The second point on appeal is that the trial court erred in allowing the introduction of evidence that Mrs. Szasz's trial counsel had used a subpoena to require Dr. Tella to bring evidence, a painting, to trial because 1) a subpoena is a lawful method of obtaining evidence for use at a trial; 2) the fact that lawful process was used to obtain evidence at

a trial was irrelevant and immaterial to any issue in the case; 3) the use of lawful process cannot be the basis of any adverse inferences generally or under the facts of this case; and 4) the comments were made for the sole purpose of creating sympathy for Dr. Tella, thereby unduly prejudicing Mrs. Szasz.

The fact that Mrs. Szasz's counsel subpoenaed the painting from Dr. Tella was first brought up on redirect examination of Mrs. Szasz by her own counsel. An objection to the admission of evidence is waived where the same or similar evidence has been elicited or introduced by the objector. *Alvey v. Sears, Roebuck & Co.,* 360 S.W.2d 231, 234 (Mo.1962). Therefore, because Mrs. Szasz's counsel first brought out the fact that he had subpoenaed the painting from Dr. Tella, Mrs. Szasz may not complain on appeal that Dr. Tella's counsel later asked a similar question of Dr. Tella.

We next address Mrs. Szasz's contention that Dr. Tella's counsel made the following improper remarks during closing argument:

> What did Mr. Pickett do on cross-examination? He forced [Dr. Tella] to bring a picture. A picture. What does this have to do with this case other than harassment of Dr. Tella, making her bring it? She paid $4,000 for that and she has to bring it and take it home every day to safe keep it.

\* \* \* \* \*

Mrs. Szasz's counsel objected to the remarks, and the trial court responded, "This is just argument." Mrs. Szasz argues on appeal that the remarks were improper because they reflected negatively on her counsel's proper use of the legal system.

Counsel is traditionally given wide latitude to suggest inferences from the evidence on closing argument. *Moore v. Missouri Pac. R.R. Co.,* 825 S.W.2d 839, 844 (Mo. banc 1992). The trial court is accorded broad discretion in ruling on the propriety of a closing argument and will suffer reversal only for an abuse of discretion, even if the inferences drawn are illogical or erroneous. *Id.* In addition, the trial court has sound

discretion in determining whether closing argument has had a prejudicial effect, and its judgment will not be disturbed on appeal unless there is a manifest abuse of discretion. *Bowls*, 950 S.W.2d at 699. We do not find an abuse of discretion in this case, particularly in light of the fact that Mrs. Szasz's counsel first broached the matter of Dr. Tella being subpoenaed to bring the painting. *See State ex rel. Missouri Highway and Transp. Comm'n v. Matula*, 910 S.W.2d 355, 362 (Mo. App. E.D.1995). Point denied.

### Point III

■ The third point on appeal is that the trial court erred in permitting redirect examination of Dr. Tella's expert witness, Dr. Heibert, on the subject of whether Mrs. Szasz's trial counsel refused to pay a fee to Dr. Heibert for a videotape deposition in a completely separate case and instead subpoenaed him to testify in that case. Mrs. Szasz argues that 1) a subpoena is a lawful method of obtaining evidence for use at a trial; 2) the fact that lawful process was used to obtain evidence at a trial was irrelevant and immaterial to any issue in the case, especially when the subpoena was used in an unrelated case; 3) the use of lawful process cannot be the basis of any adverse inferences generally or under the facts of this case; 4) the sole purpose of the questioning was to create animosity toward Mrs. Szasz's counsel and therefore toward Mrs. Szasz; 5) the fact that Dr. Heibert had been subpoenaed to testify by Mrs. Szasz's counsel in an unrelated case was irrelevant and immaterial to any issue in the case; and 6) the prejudicial effect of the testimony outweighed its non-existent probative value.

As with the testimony in Point II, the issue of Dr. Heibert's participation in another lawsuit was first brought up during cross-examination of Dr. Heibert by Mrs. Szasz's counsel. Dr. Heibert gave the following testimony on cross-examination:

Q. Okay. Exhibit No. 327 is a letter that your office sent me on December 7th, 1992, is it not, sir?

A. Yes, it is.

Q. It's about the Jerry Yegello case, a patient of yours and one that I ended up having to try, isn't that correct?

A. That's correct.

Q. And I wanted to take your videotaped deposition, didn't I?

A. That's correct.

Q. And your office said Dr. Heibert's deposition charge is $1500 an hour, doesn't it?

A. That was—

Q. Is that what it says?

A. That's what it says.

Q. Thank you. So you, in fact, have charged more than $500 an hour, $1500 an hour back in '92—

A. Yes.

Q. —isn't that correct?

A. That's correct.

Q. And I refused to pay it and subpoenaed you, didn't I?

A. Yes. Yes, you did.

\* \* \* \* \*

On redirect, Dr. Tella's counsel returned to the subject of the fee dispute first brought up by Mrs. Szasz's counsel, apparently in an effort to more fully explain the incident. Dr. Heibert testified that during the 1992 incident, Mrs. Szasz's counsel had refused to pay him and had gone to the administration of the hospital where he was working to complain about the fees. He further testified that Mrs. Szasz's counsel had subpoenaed him to testify in that case. All of this testimony was elicited with no objection from Mrs. Szasz's counsel. In fact, Mrs. Szasz's counsel did not object to Dr. Heibert's testimony until eleven questions had already been asked and answered on the matter. Therefore, Mrs. Szasz waived any objection she may have had to the portion of the testimony to which she did not object at the earliest opportunity. *Chism v. Steffens*, 797 S.W.2d 553, 559 (Mo.App. W.D.1990).

When Mrs. Szasz's counsel finally did object and there was a bench conference on the matter, the trial court noted that the line of questioning was collateral to the principal issues of the case and he suggested that Dr. Tella's counsel conclude the matter. Dr. Tella's counsel then asked Dr. Heibert four more questions to conclude the line of questioning. The only information elicited as a result of the final four questions was that Dr.

Heibert complied with the subpoena and testified at the trial in St. Joseph as a factual witness.

It is clear that once Mrs. Szasz's counsel finally objected to the line of questioning, any animosity toward him in the minds of the jury had already been created, first by his own cross-examination of Dr. Heibert and then by Dr. Tella's counsel's questions on redirect, to which he did not object. Therefore, we find that the few follow-up questions after Mrs. Szasz's counsel's objection could not have prejudiced Mrs. Szasz. Point denied.

### Point IV

The fifth point on appeal is that the cumulative effect of the errors of the trial court is sufficient to warrant reversal and remand for a new trial, even if the errors considered individually do not each warrant reversal and remand for a new trial. For the reasons discussed above, no reversible errors occurred and, therefore, there was no cumulative prejudicial effect. *Philmon v. Baum*, 865 S.W.2d 771, 779 (Mo.App. W.D.1993). Point denied.

The judgment of the trial court is affirmed.

All concur.