Larry **BOSHEARS**, Respondent,

and

Jamie Baggett, Plaintiff,

v.

**SAINT–GOBAIN CALMAR, INC.,** and **William T. Whitlow,** Appellants.

No. WD 67443.

Missouri Court of Appeals, Western District.

Aug. 12, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 30, 2008.

Application for Transfer Denied Jan. 27, 2009.

Paul L. Wickens, Kyle N. Roehler, and Thomas R. Larson, Kansas City, MO, for appellants.

Daniel W. Craig, Kansas City, MO, for respondents.

Before JAMES M. SMART, JR., P.J., LISA WHITE HARDWICK, and JAMES EDWARD WELSH, JJ.

JAMES EDWARD WELSH, Judge.

Larry Boshears (Boshears) and Jamie Baggett (Baggett) sued Saint–Gobain Calmar, Inc. (Calmar), and William T. Whitlow for negligence due to the injuries they suffered while performing work for Calmar on property leased by Calmar. A jury found for Boshears and Baggett. After comparative fault adjustments by the circuit court, the verdict in favor of Boshears was for $1,360,000 and the verdict in favor of Baggett was for $1,700,000.[1] Calmar and Whitlow filed a motion for judgment notwithstanding the verdict claiming that the circuit court lacked jurisdiction and that workers' compensation was the exclusive remedy available to Boshears and another motion for judgment notwithstanding the verdict and/or for new trial. The circuit court denied both motions. Calmar and Whitlow appeal.[2] They assert

---

1. While this appeal was pending, the parties settled Baggett's claims.

2. This appeal is a companion case to *Marion Michael Distefano v. Saint–Gobain Calmar, Inc., Grandview Road Property, L.L.C., and William T. Whitlow*, 272 S.W.3d 207 (Mo.App.

2008) which is being handed down simultaneously with this case. The two cases were tried separately but consecutively before the circuit court. In both cases, Calmar and Whitlow contend that the circuit court lacked subject matter jurisdiction because Calmar was the statutory employer of the injured

that: (1) the circuit court lacked subject matter jurisdiction over Boshears's negligence claim because, pursuant to section 287.040.2, RSMo Cum.Supp.2007,[3] Calmar was Boshears's statutory employer, and, therefore, the case falls within the exclusive jurisdiction of workers' compensation, (2) the circuit court erred in allowing Boshears to question Calmar's witnesses regarding "who was at fault," (3) the circuit court erred in allowing Boshears to question Calmar's witnesses as to "whether [it] learned [its] lesson" or "what [it] would do differently in the future," (4) the circuit court erred in allowing Boshears to argue in his closing statement that Boshears had not hired expert George Cave, (5) the circuit court erred in excluding evidence that Boshears had hired expert Cave, (6) the circuit court erred in denying Calmar's motion for new trial. We disagree and affirm the circuit court's judgment.

Calmar manufactures liquid dispensing systems, such as trigger sprayers, lotion pumps, liquid soap dispensers, and fine mist sprayers. In 2004, Calmar decided to consolidate its two manufacturing operations into one plant and entered into a lease for a building in Grandview, Missouri. Calmar took possession of the Grandview property in March 2004. After Calmar took possession and control over the property, it began the process of construction and renovation of the property to meet its manufacturing needs. Although Calmar hired a general contractor to handle the work for the office portion of the facility, it did not hire a general contractor to supervise and manage the work in the manufacturing portion of the facility.

William Whitlow served as Calmar's Plant Engineer. According to Whitlow, seventy-five percent of his primary duties were related to maintenance of the facility, contracts related to yard service, janitorial services, and maintenance contracts. The remaining twenty-five percent of his work involved potential remodel, construction, and design of facilities. Whitlow stated, "I get involved sometimes with divisions outside of where I currently work in somewhat of a consultant fashion for design of process systems." Whitlow said that it was his job to plan the layout of the plant and the placement of the machines within the facility. He stated he was also responsible for designing the routing of the process piping of the machines and was involved with the electrical supplies to this facility, including designing and inspecting electrical systems.

Whitlow reported directly to Calmar's Vice President of Operations, Keith Dempton. In describing Whitlow's role at the renovation of the plant, Dempton said:

Bill Whitlow was very involved with the design of the layout and—as well as the infrastructure. Mr. Whitlow has designed support infrastructure for injection molding operations in the past, so he was very instrumental in developing the design to support that structure. He was also very instrumental in the layout of the equipment on the shop floor, both in molding and assembly. So he had a very integral part.

He was on the—a member of the steering committee who decided, when we quoted the project, which contractors we would send quotes to and we—I don't think there was one portion of the con-

---

workers, and, therefore, workers' compensation was the injured workers' exclusive remedy.

**3.** Section 287.040 was amended by the General Assembly in 2005. Prior to 2005, section

287.040.2 appeared in subsection .3. Other than the renumbering, the provision stayed the same.

tract that we didn't get multiple quotes from multiple contractors.

He was on—I would say an on-site guy helping to answer questions as we started to get into renovation.

According to Dempton, Whitlow did not have any supervisory role or management role over anyone doing the construction work.

Calmar hired several outside contractors to perform the demolition and renovation work. Calmar hired Country Club Contractors to repaint the warehouse ceiling and to remove gas lines, electrical lines, and other fixtures from the Grandview property. County Club Contractors in turn subcontracted with Doc's Painting to remove gas lines and fixtures from the property.

On June 22, 2004, Boshears and Baggett, employees of Doc's Painting, used a scissor lift to reach gas lines near the ceiling so that they could cut the pipes. As they cut into one of the gas pipes, a fire erupted. Marion Michael Distefano, who was working for American Fire Protection, noticed the fire and noticed the men on the scissor lift. Distefano immediately drove a second scissor lift to the fire, raised the lift into the air, and pulled Boshears and Baggett from the burning lift. Boshears sustained deep and superficial 2nd degree burns to approximately 10% of his body, including the face, arms, shoulders, and upper extremities.

Whitlow assumed the duty to turn off and vent the gas lines at the building during the demolition and renovation. Whitlow admitted that he missed turning off the gas line on which Boshears and Baggett were cutting.

Boshears sued Calmar and Whitlow for negligence, and a jury awarded him $1,360,000, after the circuit court made the comparative fault adjustment. Calmar

and Whitlow filed a motion for judgment notwithstanding the verdict claiming that the circuit court lacked jurisdiction and that workers' compensation was the exclusive remedy available to Boshears and another motion for judgment notwithstanding the verdict and/or for new trial. The circuit court denied both motions. Calmar and Whitlow appeal from the circuit court's judgment.

■ For its first point, Calmar contends that the circuit court lacked subject matter jurisdiction over Boshears's negligence claim because, pursuant to section 287.040.2, RSMo Supp.2007, Calmar was Boshears's statutory employer, and, therefore, the case falls within the exclusive jurisdiction of workers' compensation. Ordinarily, "[t]he determination of whether a case falls within the exclusive jurisdiction of the Workers' Compensation Law is a question of fact that is left to the sound discretion of the trial court." *State ex rel. MW Builders, Inc. v. Midkiff,* 222 S.W.3d 267, 269 (Mo. banc 2007). When, however, "the facts are not in dispute as to the nature of the agreement and the work required by it, the existence or absence of statutory employment is a question of law for the courts to decide." *Bass v. Nat'l Super Mkts., Inc.,* 911 S.W.2d 617, 621 (Mo. banc 1995), *cert. denied,* 517 U.S. 1208, 116 S.Ct. 1825, 134 L.Ed.2d 930 (1996).

■ Calmar and Whitlow assert that the facts in this case are not in dispute, and, therefore, we should review this case de novo. We agree that the material facts as to the nature of the agreements between Boshears, Country Club Contractors, and Calmar and the work required by the agreements are not in dispute. Boshears contends, however, that he greatly disputes the facts about whether or not Calmar acted as its own general contractor for the demolition and renovation of its

facility, and, therefore, we should review the circuit court's determination for an abuse of discretion. Whether or not Calmar acted as its own general contractor for the demolition and renovation of its facility is indeed a dispute between the parties, but it is not a dispute of fact but is a dispute about the application of undisputed facts leading to a conclusion of law. The issue before us is whether or not the facts establish that Calmar was both an owner and a general contractor under circumstances which establish that Calmar was Boshears's statutory employer. Under these circumstances, "the existence or absence of statutory employment is a question of law for the courts to decide." *Bass*, 911 S.W.2d at 621.

■ Moreover, although we should resolve the question of jurisdiction in favor of applying the Workers' Compensation Act, we must strictly construe the Act when existing common law rights are affected. *Seldomridge v. Gen. Mills Operations, Inc.*, 140 S.W.3d 58, 61 (Mo.App. 2004). "When there is a close question, the court should lean in favor of retaining the common law right of action." *Id.*

■ "Section 287.040.1 takes away the common law rights of employees for negligence of certain third parties by defining the third parties as statutory employers, even though they are not actual employers." *Looper v. Carroll*, 202 S.W.3d 59, 62 (Mo.App.2006). Section 287.040.1 says:

> Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing

work which is in the usual course of his business.

The purpose of the statute is "to prevent employers from circumventing the requirements of the [Workers' Compensation] Act by hiring independent contractors to perform work the employer would otherwise perform." *Bass*, 911 S.W.2d at 619. Calmar and Whitlow have conceded that section 287.040.1 is not applicable to this case, and it is not.

■ Section 287.040.2, however, sets forth an exception to the definition of statutory employer for owners of premises where improvements are being erected, demolished, altered, or repaired by an independent contractor. This particular subsection sets forth the allocation of loss for workers' compensation as to property owners, independent contractors, and principal contractors. *West v. Posten Constr. Co.*, 804 S.W.2d 743, 745 (Mo. banc 1991), *overruled on other grounds by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003). Section 287.040.2 provides:

> The provisions of this section shall not apply to the owner of premises upon which improvements are being erected, demolished, altered or repaired by an independent contractor but such independent contractor shall be deemed to be the employer of the employees of his subcontractors and their subcontractors when employed on or about the premises where the principal contractor is doing work.

"Such owners are not statutory employers and may be held liable for common law negligence by the employees of the independent contractor." *Looper*, 202 S.W.3d at 64 n. 6. And, if a close question exists regarding section 287.040.2, we should weigh our decision in favor of retention of the common law right of action. *Id.*

■ Calmar asserts that, although it was "the owner of premises upon which improvements [were] being erected, demolished, altered or repaired,"[4] it was still Boshears's statutory employer because it acted as the general contractor for the project. In support of this contention, Calmar and Whitlow rely upon *West v. Posten Construction Co.*, 804 S.W.2d 743 (Mo. banc 1991).

In *West*, the Missouri Supreme Court addressed the issue of "whether one who is contemporaneously an owner and his own general contractor is liable to his independent contractor—statutory employee for workers' compensation benefits." *Id.* at 743. The evidence in *West* established that David Posten was a general contractor for the construction of new buildings and the remodeling of existing buildings. *Id.* Posten hired Roger West to perform electrical and plumbing work on a house Posten was building to be used as his personal home. *Id.* at 743–44. Posten conceded that for this project he was both the owner and the general contractor. *Id.* at 745. West injured his left eye while working on Posten's house. *Id.* at 743. West filed a claim for workers' compensation asserting that Posten was his statutory employer. *Id.* The Labor and Industrial Relations Commission found that Posten was exempt from workers' compensation liability as an owner under section 287.040.3, RSMo 1986.[5] *Id.* The Missouri Supreme Court disagreed.

The Missouri Supreme Court held that had Posten been acting as the owner only and not the general contractor, he would have been exempted from workers' compensation liability. *Id.* at 745. The *West* court held:

If Posten had chosen another contractor to build the house, Posten would have been exempted from workers' compensation liability by section 287.040.3 because he would be only an owner of the premises instead of being both an "owner" and an "independent contractor" as contemplated by section 287.040.3. As stated in *Atlas Powder Co. v. Hanson*, 136 F.2d 444 (8th Cir.1943), section 287.040.3 applies "to a situation where a property owner procures an independent contractor to build him a house," and "[i]n such a situation there is a reason why one who is merely the owner of premises upon which he may in many cases not even enter should not be made an employer in any sense of the workmen on the job." *Id.* at 448. Posten did not procure an independent contractor to build his house; *no reason exists not to allocate this loss to the principal contractor in this case who was erecting this improvement as a regular part of his construction business.*

Section 287.040.3 recognizes two separate actors with different results attributed to each: the owner is exempted from liability, while the independent contractor, also serving as the "principal contractor" in this case, is held liable. Posten was both.

*Id.* (emphasis added).

The *West* case does not offer support to Calmar's position. In *West*, the Supreme Court determined that Posten, as the principal contractor, "was erecting this improvement as a regular part of his construction business" and was not exempt

4. Although Calmar leased the premises from Grandview Road Property, for the purposes of § 287.040.2, Calmar is deemed to be the owner of the property because it controlled the property at the time of Boshears's injury.

*James v. Union Elec. Co.*, 978 S.W.2d 372, 375 (Mo.App.1998).

5. This section has since been recodified as section 287.040.2.

from liability under workers' compensation because he was acting in a dual capacity as both the landowner and the general contractor. *Id.* Calmar, however, is not a general contractor by trade like Posten; it is merely the owner of a manufacturing business. It was not demolishing and renovating the Grandview property as "a regular part" of its business of manufacturing fluid dispensing systems. Calmar was not a general contractor by trade; therefore, its contention that it was Boshears's statutory employer is without merit. *See Thomas v. Halbert*, 875 S.W.2d 243, 245 (Mo.App.1994) (auto repair shop owner was not a general contractor because the construction of an addition to the auto repair shop was not a regular part of the business of an auto repair shop); *cf. Mays v. Penzel Constr. Co.*, 838 S.W.2d 1, 3 (Mo.App.1992) (construction company was the owner of the premises and was the general contractor for a construction project on its premises which was being done in furtherance of the company's usual business).

In *West*, the Supreme Court merely was allocating the risk between construction companies, who carried workers' compensation insurance on construction workers. Calmar argues that, despite section 287.040.2 exemption, an owner, who carries workers' compensation insurance on manufacturing employees, should be treated the same. We do not construe *West* so broadly.

We recognize that in *Vatterott v. Hammerts Iron Works, Inc.*, 968 S.W.2d 120, 122 (Mo. banc 1998), the Missouri Supreme Court held that section 287.040.3 (recodified now as section 287.040.2) provides an independent basis for statutory employment under section 287.040 and that an employer is not required to meet the requirements of section 287.040.1 to be a statutory employer. Under section 287.040.1, an employer is liable for workers' compensation to contractors, subcontractors, and their employees who are injured on the premises of the employer "while doing work which is in the usual course of his business." Calmar and Whitlow contend, therefore, that pursuant to *Vatterott*, we must hold a premise owner liable for workers' compensation if the owner acts as a general contractor regardless of whether it is a regular part of the owner's business.

*Vatterott*, however, did not involve an owner of the premises. Moreover, to hold as Calmar and Whitlow contend, would essentially eviscerate any exception from workers' compensation that a premise owner has under section 287.040.2. Under Calmar and Whitlow's analysis, any premise owner would be a general contractor if the owner (1) reviews and accepts bids from independent contractors, (2) sets up timelines for the completion of work, (3) discusses the specifics surrounding the nature of the work needed for the project, (4) inspects the work completed by the workers, (5) pays the contractors, (6) answers questions about the project and any difficulties, (7) controls access to the property, (8) requires contractors to check in with a representative of the company, and (9) instructs contractors where to perform the work. These things are done by the owner not as a "general contractor" but as necessary means in getting the work done for its construction project. Under the analysis in *West*, the Missouri Supreme Court determined that it would find an owner liable for workers' compensation when the owner serves in a dual role as owner and general contractor when the demolishing or repairing of an improvement occurs as a "regular part" of the owner's business. *West*, 804 S.W.2d at 745. As we previously concluded, Calmar was not demolishing and renovating the Grandview property as "a regular part" of

its business of manufacturing fluid dispensing systems.

In its brief, Calmar contends that "[t]he obviousness of the conclusion that Calmar acted as its own general contractor is illustrated by the fact that . . . in opening statement in the companion case of *Distefano v. St. Gobain Calmar, Inc.,* Case No. 04CV234210, plaintiffs' counsel identified Calmar as the General [Contractor] for the project." We acknowledge that in the companion case, Distefano admitted in his opening statement that Calmar was the general contractor for the construction project[6] and that Whitlow in his post-trial affidavit says that Calmar was the general contractor for the construction project. We are not persuaded that these admissions alone mandate the conclusion that Calmar is Boshears's statutory employer, especially given the Missouri Supreme Court's decision in *West.* Moreover, as previously stated, the determination of whether or not the facts establish that Calmar was both an owner and a general contractor under circumstances which establish that Calmar was Boshears's statutory employer is an issue of law. An "admission, to be binding, must be one of fact and not a conclusion of law." *Stockton v. Tester,* 273 S.W.2d 783, 786 (Mo.App.1954); *see also Metal Exch. Corp. v. J.W. Terrill, Inc.,* 173 S.W.3d 672, 679 n. 2 (Mo.App.2005). " '[A]dmissions of a party in relation to a question of law is no evidence.' " *Wright v. Quattrochi,* 330 Mo. 173, 49 S.W.2d 3, 7 (1932) (citation omitted).

At the time of Boshears's injury, Calmar was the owner of the premises upon which Boshears was hurt. Boshears was an employee/owner of Doc's Painting and was performing work under a contract between Doc's Painting and Country Club Contractors as a subcontract to Calmar's contract with Country Club Contractors. Section 287.040.2 does not apply to Calmar as the owner of premises upon which improvements are being demolished or repaired by an independent contractor like Doc's Painting. Pursuant to section 287.040.2, although Doc's Painting is the employer of Boshears, the loss occasioned by Boshears's injury for workers' compensation is allocated to Country Club Contractors.

The circuit court did not err in denying Calmar's and Whitlow's motion for judgment notwithstanding the verdict. Calmar was not Boshears's statutory employer, and, the case does not fall within the exclusive jurisdiction of workers' compensation. Calmar, therefore, may be held liable for Boshears's common law claim of negligence. Point I denied.

For its second point, Calmar contends that the circuit court erred in allowing Boshears to question defense witnesses regarding "who was at fault" because those questions invaded the province of the jury. "The decision of the trial court to admit or exclude evidence is reviewed for an abuse of its discretion." *Peters v. Gen. Motors Corp.,* 200 S.W.3d 1, 9 (Mo.App.2006). " 'The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration.' " *Nelson v. Waxman,* 9 S.W.3d 601, 604 (Mo. banc 2000) (citation omitted). The circuit court's evidentiary ruling will be affirmed

---

6. During opening statement Distefano's attorney said: "Saint–Gobain Calmar, the defendant in this case . . . was the general contractor for the retrofit of this facility. They were in charge of doing everything. There is no doubt about it. They were the general contractor."

"unless there is a substantial or glaring injustice." *Romeo v. Jones,* 144 S.W.3d 324, 332 (Mo.App.2004). To reverse, the circuit court's erroneous admission or exclusion of evidence must have been prejudicial and materially affected the merits of the action. *Id.*

Preliminarily, Boshears argues that Calmar's second point should not be reviewed as it violates Rule 84.04. Boshears argues that Calmar fails to provide a concise statement of the challenged ruling of the circuit court and fails to provide the evidentiary basis upon which the rule of law is applicable. We agree. Rule 84.04 lists the mandatory requirements that Calmar's brief must meet. *Pattie v. French Quarter Resorts,* 213 S.W.3d 237, 239 (Mo.App.2007). Rule 84.04(d)(1)(B) requires Calmar to state concisely the legal reasons for its claim of reversible error. Compliance with Rule 84.04 is mandatory to ensure that the appellate court does not become an advocate for Calmar by speculating on facts and on arguments that have not been made. *Pattie,* 213 S.W.3d at 239. " '[I]t is not within this Court's province ... to speculate [and] then decide arguments that are not asserted or that are merely asserted but not developed.' " *Kimble v. Muth,* 221 S.W.3d 419, 423 (Mo.App.2006) (citation omitted).

Moreover, in this point, Calmar contends generally that Boshears was allowed to question defense witnesses regarding "who was at fault" and cites to the trial transcript for specific examples. However, Calmar does not point to even one instance where Boshears poses the question "who was at fault." Several citations set forth by Calmar reflect Boshears's questioning witnesses regarding whether Calmar caused or contributed to cause Boshears's injuries. Calmar's citations to the record show objections that the questions were repetitious and argumentative.

In another citation, no objection was made to the line of questioning. Where Calmar objected on the basis that the questioning invaded the province of the jury, the circuit court sustained the objection. However, in all of the citations provided by Calmar, there is not one question by Boshears asking "who was at fault," leaving it for this Court to speculate and determine what ruling of the circuit court Calmar asserts was error. As such, Calmar has failed to comply with Rule 84.04. Although Calmar has clearly violated Rule 84.04, we gratuitously offer the parties these observations disposing of this point.

The only citation to the trial record provided by Calmar, which arguably supports its point relied on, reflects Boshears's questioning Calmar's corporate representative, Judy Titus, as to what caused or contributed to cause Boshears's injuries. Calmar objected on the basis that it called for a legal conclusion and invaded the province of the jury, and the circuit court overruled the objection.

Boshears contends that the circuit court properly overruled Calmar's objection because Calmar had previously opened the door to this testimony via the prior testimony of Ben Scheu, a Calmar representative. Scheu previously testified in a nonresponsive manner attributing fault to Boshears. The circuit court overruled Calmar's objection to asking subsequent witnesses questions regarding cause. Calmar cannot open the subject and then complain of testimony elicited by Boshears to refute the inferences raised by Calmar's evidence. *Gingerich v. Kline,* 75 S.W.3d 776, 783 (Mo.App.2002). The circuit court's ruling was not an abuse of discretion. Point II denied.

For its third point, Calmar contends that the circuit court erred in allowing Boshears to question Calmar's witnesses about "whether [Calmar] learned [its] lesson" or about what Calmar would

do differently in the future. Calmar argues that this line of questioning was irrelevant, immaterial, speculative, lacked probative value, and resulted in prejudice to Calmar because it presupposed and suggested Calmar was at fault. The abuse of discretion standard of review set forth in our discussion of Point II also applies to this point.

■ Calmar asserts that Boshears asked every defense witness what Calmar would do differently in light of this accident and/or if Calmar had "learned its lesson." Calmar again lists several citations to the trial transcript in support of this point. However, upon review of these citations, only the first citation provides possible support. The other citations offered by Calmar show either no objection was made by Calmar or the circuit court sustained Calmar's objection, preserving nothing for appeal. Calmar argues that these were properly preserved because they were included in Calmar's pretrial motions in limine. However, motions in limine preserve nothing for appeal. *State v. Laws*, 853 S.W.2d 472, 473 (Mo.App. 1993). "An objection must be made at trial when the evidence is offered in order to preserve the issue for appellate review." *Id.*

The trial record reflects Boshears's asking Ben Scheu if he would let Whitlow do this again tomorrow. Calmar's objection was overruled. Calmar's main contention is that these questions amounted to improper testimony about subsequent remedial measures. This Court held in *Letz v. Turbomeca Engine Corp.*, 975 S.W.2d 155 (Mo.App.1997), that "[a]ctions subsequent to those for which damages are sought may be relevant and 'admissible under an issue of exemplary damages if so connected with the particular acts as tending to

show defendant's disposition, intention, or motive in the commission of the particular acts for which damages are claimed.' " *Id.* at 174 (citation omitted). The circuit court ruled that these questions were relevant to Boshears's claim for punitive damages.[7] When the motion in limine on this issue was argued prior to the trial, the circuit court indicated that these questions would be relevant to punitive damages and more particularly to conscious disregard. In addition, the circuit court indicated that this does not amount to post-accident remedial measures. Again, later into the trial, the circuit court referred to *Maugh v. Chrysler Corp.*, 818 S.W.2d 658 (Mo.App.1991), in further support of its ruling. In *Maugh*, post-event conduct was deemed relevant to show mitigation of punitive damages. *Id.* at 664. As such, the circuit court did not abuse its discretion in overruling Calmar's objection. Point III denied.

■ For its fourth point, Calmar contends that the circuit court erred in allowing Boshears to argue in his closing argument that he had not hired expert George Cave. Prior to trial, Boshears identified Cave as an expert in this case, and he was deposed. Boshears decided not to call Cave as a witness. Calmar presented excerpts of Cave's deposition to the jury.

The statements that Calmar complains of are that "maybe we should have brought in an expert. . . . I don't know why we need to go get an expert to pay him to come and say a man should do what he says he's going to do. . . . I don't believe in buying experts[.]"

■ We review the circuit court's ruling in closing argument for an abuse of discretion. *Nelson*, 9 S.W.3d at 606. "In closing argument, counsel is afforded wide

---

7. At the instruction conference, Boshears elected not to submit his punitive damages

claim to the jury.

latitude to suggest inferences from the evidence and the [circuit] court similarly has broad discretion to determine if a particular line of argument is proper." *Hammer v. Waterhouse*, 895 S.W.2d 95, 105 (Mo.App.1995). "In the exercise of its discretion, the circuit court is in the best position to appraise the consequence of argument[,] and the appellate court may intervene only if it concludes that the [circuit] court abused that discretion." *Id.*

This point is without merit. Calmar introduced and argued the inference that Boshears had not hired an expert before Boshears argued the same. In the first portion of his closing argument, Boshears made no argument or inference that he did not hire expert Cave. Then, Calmar made the argument that it brought the expert testimony of both McKinney and Cave. Calmar argued that "[d]on't you think that if what Bill Whitlow did was so wrong that they would have somebody to come in and do that, talk about that, talk about what lockout/tagout is?" It was Calmar that argued, "who brought the evidence to you? Mr. Cave. Mr. McKinney ... brought you two. They brought you zero." And, again in closing, Calmar argued that "they didn't bring you any experts." Only in rebuttal did Boshears make statements regarding the experts, and those statements were consistent with the arguments already made by Calmar.

"'[T]he law indulges a liberal attitude toward argument, particularly where the comment complained of is fair retort or responds to prior argument of opposing counsel.'" *Morgan Publications, Inc. v. Squire Publishers, Inc.*, 26 S.W.3d 164, 170 (Mo.App.2000) (citation omitted). The record reflects that Calmar was the first party to claim that it brought two experts and that Boshears brought zero. "An objection to the admission of evidence is waived where the same or similar evidence has been elicited or introduced by the objector." *Szasz v. Tella*, 984 S.W.2d 129, 132 (Mo.App.1998). Further, in no way can Calmar demonstrate that is was prejudiced by the remarks of Boshears when Calmar itself had already made the same statements to the jury. Point IV denied.

For its fifth point, Calmar claims that the circuit court erred in excluding evidence that George Cave was an expert that had been retained by Boshears. Again, the abuse of discretion standard of review set forth in our discussion of Point II also applies to this point. Calmar contends that the circuit court precluded it from presenting those portions of Cave's deposition where Cave stated he was retained by Boshears. In support of its argument Calmar cites to the trial transcript in which the circuit court states, "[I] know that plaintiff's filed a motion in limine ... There's also an objection to that portion of Cave's deposition. I think you can predict I'm going to rule the same way on that as I did before." It is unclear as to what ruling the circuit court refers. Calmar does not attempt to clarify this issue, and Boshears argues that the circuit court never ruled on this issue.

This issue, however, was not preserved for appeal. Although Boshears filed a motion in limine regarding its relationship with Cave, that motion was never ruled on by the circuit court, and Calmar never sought to introduce this evidence. As a result, Calmar does not have an appealable issue. Even if the motion in limine had been sustained by the circuit court, Calmar, in order to preserve the issue for appellate review, must attempt to present the excluded evidence at trial, and, if an objection to the proffered evidence is sustained, the proponent must then make an offer of proof. *Evans v. Wal-Mart Stores, Inc.*, 976 S.W.2d 582, 584 (Mo.App.1998). Upon review of the record, we find that the circuit court did not rule on the motion

in limine, and Calmar never attempted to admit this evidence. Point V denied.

For its sixth and final point, Calmar contends that the circuit court erred in denying Calmar's motion for new trial in that the cumulative effect of the errors set forth in Points II–V combined to deny Calmar a fair trial because the combined effect of the errors was prejudicial. The Missouri Supreme Court has held that numerous non-errors cannot add up to error. *Nelson,* 9 S.W.3d at 608. Point VI denied.

We, therefore, affirm the circuit court's judgment.

All concur.