Marion Michael DISTEFANO,
Respondent,

v.

SAINT–GOBAIN CALMAR,
INC., Appellant,

Grandview Road Property,
L.L.C., Defendant,

and

William T. Whitlow, Appellant.

No. WD 67541.

Missouri Court of Appeals,
Western District.

Aug. 12, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 30, 2008.

Application for Transfer Denied
Jan. 27, 2009.

Paul L. Wickens, Kyle N. Roehler, Thomas R. Larson, Kansas City, MO, for appellants.

Sophie Woodworth, Kansas City, Mo, for respondent.

Before JAMES M. SMART, JR., P.J., LISA WHITE HARDWICK, and JAMES EDWARD WELSH, JJ.

JAMES EDWARD WELSH, Judge.

Marion Michael Distefano sued Saint–Gobain Calmar, Inc. (Calmar), and William T. Whitlow[1] for negligence due to the injuries he suffered while performing work for Calmar on property leased by Calmar. A jury found for Distefano and awarded him $100,000 in compensatory damages. Calmar and Whitlow filed a motion for judgment notwithstanding the verdict with the circuit court, which the circuit court denied. Calmar and Whitlow appeal.[2] They assert that the circuit court lacked subject matter jurisdiction over Distefano's negligence claim because, pursuant to section 287.040.2, RSMo Cum.Supp. 2007,[3] Calmar was Distefano's statutory employer, and, therefore, the case falls within the exclusive jurisdiction of workers' compensation. We disagree and affirm the circuit court's judgment.

Calmar manufactures fluid dispensing systems, such as lotion pumps, liquid soap dispensers, and fine mist sprayers. In 2004, Calmar decided to consolidate its two manufacturing operations into one plant and entered into a lease with Grandview Road Property, L.L.C., for a building in Grandview, Missouri. Calmar took possession of the Grandview property on March 1, 2004. After Calmar took possession and control over the property, it began the process of demolishing and renovating the property to meet its manufacturing needs. Although Calmar hired a general contractor to handle the work for the office portion of the facility, it did not hire a general contractor to supervise and manage the work in the manufacturing portion of the facility.

William Whitlow served as Calmar's Plant Engineer. According to Whitlow, he was responsible for maintenance, construction, construction design engineering, plant development and system's development. In regard to construction, Whitlow described his duties at Calmar as:

> I do a lot of the initial design. I work with other architects, engineers of the finalization of design. Then I work with going out and receiving—getting bids for the work, developing scopes of work, getting bids, contractors, subcontractor review, along with other members of our organization. Writing up requisitions for purchase orders, getting contracts and reviewing contracts.

Whitlow also said that it was his job "to develop all the ... infrastructure that was necessary and to develop all the means of transporting the ... water, compressed air, electricity, those things to [the] various

1. Distefano also sued Grandview Road Property, L.L.C. Grandview Road owned the property that was leased by Calmar. The jury found that Grandview Road had no liability, and no one appeals from that portion of the judgment.

2. This appeal is a companion case to *Larry Boshears and Jamie Baggett v. Saint–Gobain Calmar, Inc., and William T. Whitlow*, 272 S.W.3d 215 (Mo.App.2008) which is being handed down simultaneously with this case. The two cases were tried separately but consecutively before the circuit court. In both cases, Calmar and Whitlow contend that the circuit court lacked subject matter jurisdiction because Calmar was the statutory employer of the injured workers, and, therefore, workers' compensation was the injured workers' exclusive remedy.

3. Section 287.040 was amended by the General Assembly in 2005. Prior to 2005, section 287.040.2 appeared in subsection .3. Other than the renumbering, the provision stayed the same.

... machines" that Calmar used in its manufacturing process. Whitlow was also responsible for the layout of the plant and the placement of the machines within the facility.

Whitlow reported directly to Calmar's Vice President of Operations, Keith Dempton. In describing Whitlow's role at the renovation of the plant, Dempton said:

> We were still working with various potential subcontractors in the final design, so there were measurements being done, there were still design plans to be completed. That, in part, was [Whitlow's] responsibility, to provide—answer questions that the general contractor had in the front offices about location of offices, any questions about rest room facilities and, you know, what we wanted in there. So he was essentially passing on the information relative to design and answering questions about any design changes or any questions that the contractors had.

According to Dempton, Whitlow did not have any supervisory role or management role over anyone doing the construction work.

Calmar hired several outside contractors to perform the demolition and renovation work. Calmar hired Country Club Contractors to remove gas lines, electrical lines, and other fixtures from the Grandview property. County Club Contractors in turn subcontracted with Doc's Painting to remove gas lines and fixtures from the property. Calmar also contracted with American Fire Sprinkler Company to repair or replace old water sprinkler heads in the building.[4]

On June 22, 2004, Larry Boshears and Jamie Baggett, employees of Doc's Painting, used a scissor lift to reach gas lines near the ceiling so that they could cut the pipes. As they cut into one of the gas pipes, a fire erupted. *See Boshears v. Saint–Gobain Calmar, Inc.,* 272 S.W.2d 215 (W.D.Mo. 2008). Distefano, who was working for American Fire Sprinkler, noticed the fire and noticed the men on the scissor lift. Distefano immediately drove a second scissor lift to the fire, raised the lift into the air, and pulled Boshears and Baggett from the burning lift. As a result of his actions, Distefano sustained injuries to his neck, right shoulder, and right arm, and suffered an abdominal burn, chest pains, and post-traumatic stress disorder.

Whitlow assumed the duty to turn off and vent the gas lines at the building during the demolition and renovation. Whitlow admitted that he missed turning off the gas line on which Boshears and Baggett were cutting.

Distefano sued Calmar and Whitlow for negligence, and a jury awarded him $100,000. Calmar and Whitlow filed a motion for judgment notwithstanding the verdict claiming that the circuit court lacked jurisdiction and that workers' compensation was the exclusive remedy available to Distefano. The circuit court did not rule on Calmar's and Whitlow's motion within the time prescribed by Rule 78.06; therefore, the motion was overruled. Calmar and Whitlow appeal from the circuit court's judgment.

Ordinarily, "[t]he determination of whether a case falls within the exclusive jurisdiction of the Workers' Compensation Law is a question of fact that is left to the sound discretion of the trial court." *State ex rel. MW Builders, Inc. v. Midkiff,* 222 S.W.3d 267, 269 (Mo. banc 2007). When,

---

4. The contract with American Fire Sprinkler required American Fire Sprinkler to carry $1,000,000 worth of workers' compensation insurance and required American Fire Sprinkler to indemnify Calmar from any liability arising out of injuries to employees.

however, "the facts are not in dispute as to the nature of the agreement and the work required by it, the existence or absence of statutory employment is a question of law for the courts to decide." *Bass v. Nat'l Super Mkts., Inc.*, 911 S.W.2d 617, 621 (Mo. banc 1995), *cert. denied*, 517 U.S. 1208, 116 S.Ct. 1825, 134 L.Ed.2d 930 (1996).

■ Calmar and Whitlow assert that the facts in this case are not in dispute, and, therefore, we should review this case de novo. We agree that the material facts as to the nature of the agreement between Distefano, American Sprinkler, and Calmar and the work required by the agreement are not in dispute. Distefano contends, however, that he greatly disputes the facts about whether or not Calmar acted as its own general contractor for the demolition and renovation of its facility, and, therefore, we should review the circuit court's determination for an abuse of discretion. Whether or not Calmar acted as its own general contractor for the demolition and renovation of its facility is indeed a dispute between the parties, but it is not a dispute of fact but is a dispute about the application of undisputed facts leading to a conclusion of law. The issue before us is whether or not the facts establish that Calmar was both an owner and a general contractor under circumstances which establish that Calmar was Distefano's statutory employer. Under these circumstances, "the existence or absence of statutory employment is a question of law for the courts to decide." *Bass*, 911 S.W.2d at 621.

■ Moreover, although we should resolve the question of jurisdiction in favor of applying the Workers' Compensation Act, we must strictly construe the Act when existing common law rights are affected. *Seldomridge v. Gen. Mills Operations, Inc.*, 140 S.W.3d 58, 61 (Mo.App. 2004). "When there is a close question, the court should lean in favor of retaining the common law right of action." *Id.*

■ In their only point on appeal, Calmar and Whitlow assert that the circuit court erred in denying their motion for judgment notwithstanding the verdict.[5] In particular, they assert that the circuit court lacked subject matter jurisdiction over Distefano's negligence claim because, pursuant to section 287.040.2, Calmar was Distefano's statutory employer, and, therefore, the case falls within the exclusive jurisdiction of workers' compensation. We disagree.

■ "Section 287.040.1 takes away the common law rights of employees for negligence of certain third parties by defining the third parties as statutory employers, even though they are not actual employers." *Looper v. Carroll*, 202 S.W.3d 59, 62 (Mo.App.2006). Section 287.040.1 says:

Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing

**5.** In their point relied on, Calmar and Whitlow also assert that the circuit court erred in denying their motion for summary judgment for the same reasons. No such motion was ever filed, and Calmar's and Whitlow's brief does not in any way address this contention in the argument portion of their brief. Hence, we deem it abandoned. *Mortgage Elec. Registration Sys., Inc. v. Williams–Pelton*, 196 S.W.3d 50, 52 (Mo.App.2005). Moreover, generally, the denial of a motion for summary judgment is not appealable. *Chouteau Auto Mart, Inc. v. First Bank of Mo.*, 148 S.W.3d 17, 28 (Mo.App.2004).

work which is in the usual course of his business.

The purpose of the statute is "to prevent employers from circumventing the requirements of the [Workers' Compensation] Act by hiring independent contractors to perform work the employer would otherwise perform." *Bass*, 911 S.W.2d at 619. Calmar and Whitlow have conceded that section 287.040.1 is not applicable to this case, and it is not.

■ Section 287.040.2, however, sets forth an exception to the definition of statutory employer for owners of premises where improvements are being erected, demolished, altered, or repaired by an independent contractor. This particular subsection sets forth the allocation of loss for workers' compensation as to property owners, independent contractors, and principal contractors. *West v. Posten Constr. Co.*, 804 S.W.2d 743, 745 (Mo. banc 1991), *overruled on other grounds by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003). Section 287.040.2 provides:

> The provisions of this section shall not apply to the owner of premises upon which improvements are being erected, demolished, altered or repaired by an independent contractor but such independent contractor shall be deemed to be the employer of the employees of his subcontractors and their subcontractors when employed on or about the premises where the principal contractor is doing work.

"Such owners are not statutory employers and may be held liable for common law negligence by the employees of the independent contractor." *Looper*, 202 S.W.3d

at 64 n. 6. And, if a close question exists regarding section 287.040.2, we should weigh our decision in favor of retention of the common law right of action. *Id.*

■ Calmar asserts that, although it was "the owner of premises upon which improvements [were] being erected, demolished, altered or repaired," [6] it was still Distefano's statutory employer because it acted as the general contractor for the project. In support of this contention, Calmar and Whitlow rely upon *West v. Posten Construction Co.*, 804 S.W.2d 743 (Mo. banc 1991).

In *West*, the Missouri Supreme Court addressed the issue of "whether one who is contemporaneously an owner and his own general contractor is liable to his independent contractor—statutory employee for workers' compensation benefits." *Id.* at 743. The evidence in *West* established that David Posten was a general contractor for the construction of new buildings and the remodeling of existing buildings. *Id.* Posten hired Roger West to perform electrical and plumbing work on a house Posten was building to be used as his personal home. *Id.* at 743–44. Posten conceded that for this project he was both the owner and the general contractor. *Id.* at 745. West injured his left eye while working on Posten's house. *Id.* at 743. West filed a claim for workers' compensation asserting that Posten was his statutory employer. *Id.* The Labor and Industrial Relations Commission found that Posten was exempt from workers' compensation liability as an owner under section 287.040.3, RSMo 1986.[7] *Id.* The Missouri Supreme Court disagreed.

*James v. Union Elec. Co.*, 978 S.W.2d 372, 375 (Mo.App.1998).

6. Although Calmar leased the premises from Grandview Road Property, for the purposes of § 287.040.2, Calmar is deemed to be the owner of the property because it controlled the property at the time of Distefano's injury.

7. This section has since been recodified as section 287.040.2.

The Missouri Supreme Court held that had Posten been acting as the owner only and not the general contractor, he would have been exempted from workers' compensation liability. *Id.* at 745. The *West* court held:

> If Posten had chosen another contractor to build the house, Posten would have been exempted from workers' compensation liability by section 287.040.3 because he would be only an owner of the premises instead of being both an "owner" and an "independent contractor" as contemplated by section 287.040.3. As stated in *Atlas Powder Co. v. Hanson*, 136 F.2d 444 (8th Cir.1943), section 287.040.3 applies "to a situation where a property owner procures an independent contractor to build him a house," and "[i]n such a situation there is a reason why one who is merely the owner of premises upon which he may in many cases not even enter should not be made an employer in any sense of the workmen on the job." *Id.* at 448. Posten did not procure an independent contractor to build his house; *no reason exists not to allocate this loss to the principal contractor in this case who was erecting this improvement as a regular part of his construction business.*
>
> Section 287.040.3 recognizes two separate actors with different results attributed to each: the owner is exempted from liability, while the independent contractor, also serving as the "principal contractor" in this case, is held liable. Posten was both.

*Id.* (emphasis added).

The *West* case does not offer support to Calmar's position. In *West*, the Supreme Court determined that Posten, as the principal contractor, "was erecting this improvement as a regular part of his construction business" and was not exempt from liability under workers' compensation because he was acting in a dual capacity as both the landowner and the general contractor. *Id.* Calmar, however, is not a general contractor by trade like Posten; it is merely the owner of a manufacturing business. It was not demolishing and renovating the Grandview property as "a regular part" of its business of manufacturing fluid dispensing systems. Calmar was not a general contractor by trade; therefore, its contention that it was Distefano's statutory employer is without merit. *See Thomas v. Halbert,* 875 S.W.2d 243, 245 (Mo.App.1994) (auto repair shop owner was not a general contractor because the construction of an addition to the auto repair shop was not a regular part of the business of an auto repair shop); *cf. Mays v. Penzel Constr. Co.,* 838 S.W.2d 1, 3 (Mo.App.1992) (construction company was the owner of the premises and was the general contractor for a construction project on its premises which was being done in furtherance of the company's usual business).

In *West*, the Supreme Court merely was allocating the risk between construction companies, who carried workers' compensation insurance on construction workers. Calmar argues that, despite section 287.040.2 exemption, an owner, who carries workers' compensation insurance on manufacturing employees, should be treated the same. We do not construe *West* so broadly.

We recognize that in *Vatterott v. Hammerts Iron Works, Inc.,* 968 S.W.2d 120, 122 (Mo. banc 1998), the Missouri Supreme Court held that section 287.040.3 (recodified now as section 287.040.2) provides an independent basis for statutory employment under section 287.040 and that an employer is not required to meet the requirements of section 287.040.1 to be a statutory employer. Under section 287.040.1, an employer is liable for work-

ers' compensation to contractors, subcontractors, and their employees who are injured on the premises of the employer "while doing work which is in the usual course of his business." Calmar and Whitlow contend, therefore, that pursuant to *Vatterott*, we must hold a premise owner liable for workers' compensation if the owner acts as a general contractor regardless of whether it is a regular part of the owner's business.

*Vatterott*, however, did not involve an owner of the premises. Moreover, to hold as Calmar and Whitlow contend, would essentially eviscerate any exception from workers' compensation that a premise owner has under section 287.040.2. Under Calmar and Whitlow's analysis, any premise owner would be a general contractor if the owner (1) reviews and accepts bids from independent contractors, (2) sets up timelines for the completion of work, (3) discusses the specifics surrounding the nature of the work needed for the project, (4) inspects the work completed by the workers, (5) pays the contractors, (6) answers questions about the project and any difficulties, (7) controls access to the property, (8) requires contractors to check in with a representative of the company, and (9) instructs contractors where to perform the work. These things are done by the owner not as a "general contractor" but as necessary means in getting the work done for its construction project. Under the analysis in *West*, the Missouri Supreme Court determined that it would find an owner liable for workers' compensation when the owner serves in a dual role as owner and general contractor when the demolishing or repairing of an improvement occurs as a "regular part" of the

owner's business. *West*, 804 S.W.2d at 745. As we previously concluded, Calmar was not demolishing and renovating the Grandview property as "a regular part" of its business of manufacturing fluid dispensing systems.

 We acknowledge, however, that Distefano admitted in his opening statement that Calmar was the general contractor for the construction project[8] and that Whitlow in his post-trial affidavit says that Calmar was the general contractor for the construction project. We are not persuaded that these admissions alone mandate the conclusion that Calmar is Distefano's statutory employer, especially given the Missouri Supreme Court's decision in *West*. Moreover, as previously stated, the determination of whether or not the facts establish that Calmar was both an owner and a general contractor under circumstances which establish that Calmar was Distefano's statutory employer is an issue of law. An "admission, to be binding, must be one of fact and not a conclusion of law." *Stockton v. Tester*, 273 S.W.2d 783, 786 (Mo.App.1954); *see also Metal Exch. Corp. v. J.W. Terrill, Inc.*, 173 S.W.3d 672, 679 n. 2 (Mo.App.2005). "'[A]dmissions of a party in relation to a question of law is no evidence.'" *Wright v. Quattrochi*, 330 Mo. 173, 49 S.W.2d 3, 7 (1932) (citation omitted).

At the time of Distefano's injury, Calmar was the owner of the premises upon which Distefano was hurt. Distefano was an employee of American Fire Sprinkler and was performing work under a contract between American Fire Sprinkler and Calmar. Section 287.040.2 does not apply to Calmar as the owner of premises upon which improvements are being demolished

---

8. During opening statement Distefano's attorney said: "Saint–Gobain Calmar, the defendant in this case ... was the general contractor for the retrofit of this facility. They were in charge of doing everything. There is no doubt about it. They were the general contractor."

or repaired by an independent contractor like American Fire Sprinkler. Pursuant to section 287.040.2, American Fire Sprinkler is deemed to be the employer of Distefano, and the loss occasioned by Distefano's injury for workers' compensation is allocated to American Fire Sprinkler.

The circuit court did not err in denying Calmar's and Whitlow's motion for judgment notwithstanding the verdict. Calmar was not Distefano's statutory employer, and, the case does not fall within the exclusive jurisdiction of workers' compensation. Calmar, therefore, may be held liable for Distefano's common law claim of negligence. We affirm the circuit court's judgment.

All concur.